JAMES O. WINSTON & others *vs.* CITY OF PITTSFIELD & others.

Berkshire.   March 22, 1915. — May 24, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Equity Jurisdiction,* To set aside contract procured by misrepresentations, Fraud, Mistake, Remedy · at law.   *Contract,* Building contracts, Construction. *Damages,* Liquidated.

It here was *said* to be settled law that, where a contract to build a certain structure for an agreed compensation has been performed in full by the contractor, the fact that he has completed the work does not deprive him of the right to maintain a suit in equity to set aside the contract on the ground that he was induced to enter into it by fraudulent misrepresentations of the defendant or under mutual and material mistakes of fact and to recover the fair value of the labor and materials furnished by him to the defendant, if he brings his suit seasonably upon discovery of the fraud or mistake. In the present suit it was held upon demurrer that the bill contained no sufficient allegations of fraud or mistake to entitle the plaintiff to relief.

In a suit in equity by a contractor against a city to set aside a contract in writing, under which the plaintiff had constructed a reservoir for the defendant, on the ground that the plaintiff had been induced to enter into the contract by misrepresentations of the defendant, and to recover the fair value of the labor and materials furnished by the plaintiff in the construction of the reservoir, where it appears that in the proposal of the plaintiff, which was accepted by the defendant and was made a part of the contract, the plaintiff stated that he carefully had examined the location of the proposed work and the plans and specifications for the work and agreed that his proposal and such plans and specifications should be made a part of the contract, and where it appears that the estimates for the yardage of excavation made by the defendant's engineer and furnished to bidders were entitled "approximate quantities" and the schedule of items of the required masonry and materials was followed by the statement that the quantities were approximate only and were given as a basis for the uniform comparison of bids, the defendant reserving the right to increase or decrease the quantity of any class or portion of the work as might be deemed necessary by its engineer, the plaintiff states no ground for relief by alleging in his bill that in removing the soil for the reservoir site he was compelled to excavate more than double the number of cubic yards shown by the engineer's estimate and that in building the reservoir the different kinds of masonry and concrete blocks had to be furnished in greater and substituted quantities differing from the estimate.

Nor in such suit does the plaintiff state a ground for relief by alleging in his bill that a change of a diversion conduit from the location shown by the general plan to a "revised approximate location" required for its construction a different kind of material with a larger amount of excavation and masonry, if it appears from other allegations of the bill that the plaintiff's attention had

been called to the change when the parties met to complete the contract and before its execution, although it is alleged that the defendant's engineer then said that the change in the line and grade would not involve additional expense, because, if the plaintiff chose to rely on the engineer's honest statement instead of acting on his own judgment, he must accept the consequences.

Equity will not give relief by setting aside a contract on the ground of mistake, where, although the plaintiff made a miscalculation when he signed the contract, the terms of the instrument express correctly the exact intention of the defendant.

Where by a contract in writing between a contractor and a city for the construction of a reservoir it is stipulated that "the time in which the various portions and the whole of this contract are to be performed and the work is to be completed is of the essence of this contract," and that the city may deduct the sum of $75 "for each and every calendar day beyond said time for the completion of the said work . . . until the said work shall be completed" "as liquidated damages, and in full compensation," in a suit by the contractor against the city to set aside the contract and recover the fair value of the labor and materials furnished, the amount of compensation to the city for eight months' delay to be deducted from the contract price under the above provision cannot be treated as a penalty or forfeiture, the parties having made a clear agreement that such amount shall be treated as liquidated damages.

In a suit in equity by a contractor against a city to set aside a contract in writing, under which the plaintiff had constructed a reservoir for the defendant, and recover the fair value of the labor and materials furnished by the plaintiff, an allegation in the bill that the defendant "has assessed" and deducted damages for moneys paid to engineers and inspectors and for pumping states no ground for relief, because, if such deduction was unauthorized, the remedy by an action at law is plain, efficient and exclusive.

BILL IN EQUITY, filed in the Superior Court on April 7, 1913, and amended by a substitute bill filed on January 31, 1914, by contractors doing business in the city of New York in the State of New York under the name of Winston and Company, against the city of Pittsfield, to set aside a certain contract in writing between the plaintiffs and the defendant, which had been performed by the plaintiffs, to construct a new reservoir for the waterworks of the defendant by building a masonry dam across Mill Brook and a diversion conduit to the reservoir from a tributary of Mill Brook and from several tributaries of Roaring Brook, alleging that the defendant, in inducing the plaintiffs to enter into the contract with it, "either intentionally perpetrated a fraud upon them by representing that the work to be done within the stipulated time was of a substantially less amount and of a substantially different character . . . than it intended to require of the complainants, and so to obtain more favorable prices than could have been obtained had the facts been fairly disclosed; or

that said contract was entered into by the parties under a mutual mistake of fact and said contract is inequitable and unconscionable under the conditions herein disclosed;" and praying that an injunction might issue restraining the defendant from claiming any forfeiture of the contract on the part of the plaintiffs or from enforcing any penalty thereunder; that the bond accompanying the contract might be delivered up and cancelled; that an accounting might be taken between the plaintiffs and the defendant and that the defendant might be ordered to pay to the plaintiffs the fair value of the labor and materials furnished by them in the construction of the Farnham Reservoir with its accessories; the plaintiffs offering to return to the defendant, upon payment to them of the fair cost of the labor and materials, all sums of money which they had received on account of the work; and for further relief.

The allegations of the substitute bill are described in the opinion. The defendant demurred to the substitute bill, and the case was heard on the demurrer by *Wait,* J., who made an order sustaining the demurrer, from which the plaintiffs appealed. Later, by order of the same judge, a final decree was entered sustaining the demurrer and ordering that the bill be dismissed. The plaintiffs appealed.

*C. F. Choate, Jr.,* for the plaintiffs.

*W. R. Sears,* (*S. L. Whipple* with him,) for the defendant.

BRALEY, J. The jurisdiction of a court of equity to decree appropriate relief, where it appears that a bilateral contract, whether it remains executory or has been fully performed by the plaintiff, has been entered into through the fraudulent representations of the defendant, or under mutual and material errors of fact, and the bill is seasonably brought upon discovery of the fraud or mistake, is well settled. *Long* v. *Athol,* 196 Mass. 497, 501. *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212. *United Zinc Co.* v. *Harwood,* 216 Mass. 474, 477, 478. The question for decision is whether the plaintiffs' bill states a case within this doctrine.

The material statements admitted by the demurrer close with the allegations, that in inducing the plaintiffs to enter into the contract the defendant either intentionally perpetrated a fraud by representing that the work to be done within the stipulated time was substantially less in amount and of a substantially different

character from the work it intended to require, and that this deception was practiced for the purpose of obtaining more favorable prices than could have been obtained if the facts had been fully disclosed, or that the contract, which is inequitable and unconscionable under the conditions averred, was entered into by the parties under a mutual mistake of fact.

The bill is brought after full performance to the satisfaction of the city, and upon their own showing the plaintiffs seemingly must have discovered during the progress of the work the alleged discrepancies between the requirements as understood by them and the construction of the contract asserted by the city, hereafter referred to as the defendant. The contract of course could not be concurrently valid and voidable. If upon being aware of the alleged fraud they chose to go on, their conduct would justify the defendant's contention that they affirmed the validity of the contract. *Plympton* v. *Dunn*, 148 Mass. 523. *Ginn* v. *Almy*, 212 Mass. 486, 493. But under the explanatory and charging allegations, that because of their gradual development they did not realize and appreciate the importance and effect of the differences or changes until after the work had been done and the final measurements ascertained, we shall consider the grounds upon which they rely for rescision in the order stated in the bill, even if in view of all the alternative and qualifying allegations it seems doubtful whether actual fraud has been charged.

The plaintiffs describe themselves as engaged in the business of general contractors, and as such they have entered into and performed contracts for the construction of railroads, waterworks, reservoir dams and other works of a public nature. It was in the light of this experience that they read the pamphlet entitled, "Information for Bidders," and the draft of "a proposed contract to be entered into by any successful bidder," furnished by the defendant when it decided to construct an additional dam and storage reservoir in connection with its system of water supply, and advertised for bids. We assume that the proposal submitted to the plaintiffs, who were successful bidders, followed the form shown by the exhibit annexed to the bill. It contains these significant words, "The undersigned, as bidder, declares that . . . he has carefully examined the location of the proposed work, the annexed proposed form of contract, and the plans and speci-

fications therein referred to; and he proposes, and agrees if this proposal is accepted, that he will contract with said City . . ., in the form of the copy of the contract deposited in the office of the" city clerk. And the contract executed by the parties recites in the twenty-fifth article that all plans, general and detail, all specifications, the information for bidders and the proposal of the contractor, "are hereby made parts of this contract." If, as alleged, when full performance of the work as stipulated was demanded by the defendant, the plaintiffs in removing the soil for the reservoir site were compelled to excavate more than double the number of cubic yards shown by the engineer's estimate, and in building the dam the different classes of cyclopean masonry and concrete blocks had to be furnished in greater and substituted quantities differing from the estimate, the allegations that the estimates having been well considered represented substantially the amount and character of the work and materials required, which could not be exceeded by the defendant, cannot be sustained. The engineer's estimates for the yardage of the excavations appear in the information for bidders under the title of "approximate quantities." The schedule of items which includes the various classes of work, masonry and materials is followed by the statement that the quantities are approximate only, and are given as a basis for the uniform comparison of bids, while the city does not either expressly or by implication agree, that the actual amount of work or materials will correspond therewith, and the right is reserved to increase or decrease the quantity of any class or portion of the work as may be deemed necessary by the engineer. The plaintiffs without the schedule before them could not have bid intelligently. If they chose to read only a part, the defendant is not responsible for their inadvertence. If they read the whole, they acted with full knowledge of the conditions under which they were bidding, and the field was open to all competitors with no favors. The averment, that because of the frost and winter weather they were unable to examine thoroughly the physical conditions underlying the surface might have been a good reason for not bidding, although the defendant required bids to be submitted during the month of December, but it is not a reason for abrogating the contract into which they voluntarily entered.

The last ground of avoidance is the change of the diversion conduit from the location shown by the general plan to a "Revised Approximate Location" requiring for its construction a different kind of material with a larger amount of excavation and masonry as averred in the eighteenth and twenty-first paragraphs of the bill. The plaintiffs' attention had been called to the change when the parties met to complete the contract, and before its execution. While the plaintiffs allege that the defendant "through its engineer thereunto duly authorized" represented that the change in the line and grade would not involve additional expense, it is not alleged that the representations were made for the purpose of misleading them. If as general contractors of wide knowledge and large ability they preferred to rely on the engineer's statements instead of acting on their own judgment, informed by the general plan, the conduit plan and profile, which were before them, where the outline of the revised and approximate location plainly appears showing the old line "along the edge of the upland" when they bid, and the increased length of the new line drawn "nearer the brook," and without further inquiry or examination executed the contract, they are not shown to have been overreached by the conduct of the defendant. The plaintiffs cannot shut their eyes to the facts and contend that they were misled or defrauded. *Mabardy* v. *McHugh*, 202 Mass. 148, 151, and cases cited. *King* v. *Eagle Mills*, 10 Allen, 548, 551. *Keene* v. *Demelman*, 172 Mass. 17.

It furthermore is not alleged that the engineer had authority to do away with the contract which the parties had met to execute, and, whether what was said by him amounted to a collateral contract binding on the defendant, is not before us. The bill seeks only to cancel the contract which the plaintiffs signed.

It is also apparent that the contract is not based on a material mistake shared by both parties as in *Long* v. *Athol*, 196 Mass. 497. To warrant the reformation of a written instrument for mistake the real intention of the parties must be clearly established. *German American Ins. Co.* v. *Davis*, 131 Mass. 316. *J. P. Eustis Manuf. Co.* v. *Saco Brick Co.* 198 Mass. 212, 218, 219. Nor can a party, who has the choice between two courses of action, and chooses one with the means of full knowledge before him to which his attention is called, have relief on the ground that

he made a miscalculation. *Childs* v. *Stoddard,* 130 Mass. 110, 112. The contract as it left the hands of the plaintiffs expressed exactly the intention of the defendant and the terms under which it consented to become bound.

The work, however, not having been finished within the time specified in the sixth article, the twenty-sixth paragraph of the bill states that under the eighteenth article the defendant claims the right to deduct from the amount of the contract price remaining due "the sum of seventy-five dollars . . . for each and every calendar day beyond said time for the completion of the said work . . . until the said work shall be completed" "as liquidated damages, and in full compensation" for the delay covering a period of eight months. But the sixth article having stipulated that "the time in which the various portions and the whole of this contract are to be performed and the work is to be completed is of the essence of this contract," which has never been waived by the defendant, no relief on that ground can be decreed. The intention of the parties having been clearly expressed, the amount thus ascertained cannot under the circumstances be treated as in the nature of a penalty or forfeiture. *Wallis* v. *Carpenter,* 13 Allen, 19. *Cushing* v. *Drew,* 97 Mass. 445, 446. *Glynn* v. *Moran,* 174 Mass. 233. Story Eq. Jur. (13th ed.) §§ 1315–1320.

It further is alleged that the defendant also "has assessed" and deducted damages for moneys paid to engineers and inspectors and for pumping, but these allegations are insufficient to maintain the bill. The remedy by an action at law is plain, efficient and exclusive. *Holden* v. *Hoyt,* 134 Mass. 181, 185. *Fuller* v. *Percival,* 126 Mass. 381, 383.

We are accordingly of opinion that the contract cannot be cancelled and the plaintiffs be allowed to recover the fair value of the labor and materials, and the decree sustaining the demurrer and dismissing the bill should be affirmed with costs.

*So ordered.*