LEWIS M. YOUNG *vs.* CITY OF HOLYOKE.

Hampden.    September 26, 1916. — November 11, 1916.

Present: RUGG, C. J., LORING, BRALEY, & CARROLL, JJ.

*Contract,* Performance and breach, Rescission. *Equity Jurisdiction,* Fraud, Mistake. *Evidence,* Competency.

In a suit in equity brought against a city by a contractor, who had made a contract with the defendant to build a concrete masonry dam across a certain brook and, after proceeding with his contract for more than seven months, had aban-

doned it, and now sought to rescind the contract and recover for work and materials on a *quantum meruit* basis on the ground of fraud on the part of the defendant in estimating falsely the quantities of material and labor necessary for the work or on the ground of mutual mistake, it appeared that, while some of the estimates were grossly inadequate, the defendant was ignorant of this and made no pretence of knowing the exact amount of labor and material required for the work, that it was understood by the plaintiff and the defendant that the estimates of the rock surface, the required depth of rock excavation and the character of the material were not even approximately correct, that the estimate of the amount of work to be done was merely approximate, and that it was stated plainly in the "Information for Bidders" that there was no express or implied agreement "that the actual amount of work or material will correspond therewith," the estimates having been made solely as the basis for the uniform comparison of bids, that the plaintiff was informed before he put in his bid that changes would be made in the location of the dam, that he was given the fullest opportunity to examine the proposed location, that the exact site of the proposed location, which afterwards was adopted, was pointed out to him on a plan before he made his bid and was "staked out" in the presence of his foreman. *Held*, that there was no evidence of fraud or of mutual mistake.

In the suit above described, the plaintiff excepted to a ruling of the master admitting evidence of a conversation of the plaintiff with the defendant's engineer, before the plaintiff's bid was made, in which the plaintiff was told that it had been decided to place the gatehouse on the "up-stream side of the dam," this being one of the changes of plan which the plaintiff sought to make a ground for rescission, and it was *held* that the evidence was clearly admissible on the question of fraud and mistake.

CARROLL, J.  The plaintiff contracted in writing with the board of water commissioners of the city of Holyoke, acting for the defendant, to build a concrete masonry dam across the Manhan Brook in the town of Southampton at "certain unit quantity prices" for the different kinds of labor and materials involved. He abandoned the work before its completion, and seeks to have the contract cancelled either on the ground of the defendant's fraud in falsely estimating the quantities of material and labor necessary for the work, or on the ground of the mutual mistake of the parties in relying on these erroneous estimates; and, if this relief is not granted, he seeks to recover the balance due under the contract; and also asks for compensation because the location of the dam as shown on the plan was changed by moving its west end twenty-five feet to the north and by extending its east end seven feet to the east; and for the reason that the gatehouse was built on the upper side of the dam, the plan showing it on the lower side; as well as for changes made in the slope of the dam, in the core wall and in the spillway, so that the amount of excava-

tion and concrete construction was greatly increased; and further because he was required to remove certain concrete laid in accordance with the specifications, and was paid for only one foot thickness of Class A concrete when he should have been paid for four feet.

The defendant does not question the plaintiff's pleadings. It denies his claims and asks for relief against him under a clause in the contract giving it the right, in case the contract is abandoned, to complete the work deducting the additional expense for so doing from the sum otherwise payable to the plaintiff.

The master found there was no fraud on the part of the defendant; that the plaintiff was not justified in abandoning the contract and was not entitled to recover on a *quantum meruit* basis for what was done under the contract. After deducting the extra cost of completing the structure, he found the sum due the plaintiff. A decree was entered,* awarding him the sum of $4,433.63 with interest from May 19, 1915. The plaintiff appealed.

A printed pamphlet called "Information for Bidders" was in the possession of the plaintiff from May 8, 1911, to May 15, 1911, when he submitted his bid. In this pamphlet it was stated that test pits had been made on the site of the dam, and their location and depth were shown on the plans; "But there is no expressed or implied agreement that the surface of the rock or the depth of the rock excavation or the character of the material is even approximately correct." It also provided that the contractor should take into account the probability of the location of the surface of the ledge rock, and other conditions therein affecting the act of construction, varying from "the indications on the plans." Estimated quantities were given for earth and rock excavation, mass concrete Class A, B and C, Cyclopean masonry, and steel and metal work; it was stipulated that these "quantities are approximate only."

The contract provided that the work was to be done under the direction of the engineer of the city's water department, who had the right to modify the plans as he thought necessary, and to make alterations in the grade, dimensions, or materials of the work.

On May 8, 1911, the plaintiff, at his own request, was taken

* By order of *Pierce*, J.

to the site of the dam where he made an inspection, entering the test pits and examining the rock at the bottom. In one of the test holes he found soft rock, where deeper rock excavation than that originally called for was afterwards found to be necessary.

Before filing his bid on May 15, 1911, he was informed by the engineer that the gatehouse was to be above the dam and the change would mean an increase of about seven hundred cubic yards of masonry, to which he replied, "this made no difference; that the more quantity was required, the better." After the bids were opened, he was told by the chairman of the water commissioners that he might have time to consider his offer. Two days later, he again examined the site of the dam and its location as actually built. On this occasion he entered all the test pits and examined and inspected the rock at the bottom of each. Later on the same day, he appeared before the board and announced that he was satisfied, and the contract was awarded to him. He began work on May 21, 1911, and continued to December 27, 1911.

From this brief recital it is plain that no fraud was practiced on the plaintiff. While some of the estimates were grossly inadequate, the defendant was ignorant of this fact, and it made no pretence of knowing the exact amount of labor and material required to complete the structure. *Cole* v. *Cassidy,* 138 Mass. 437. *Nash* v. *Minnesota Title Ins. & Trust Co.* 163 Mass. 574, 578. It was understood by the plaintiff and the defendant that the rock surface, the depth of the rock excavation and the character of the material were not even approximately correct. The quantities of work to be done were merely approximate. It was plainly stated that there was no express or implied agreement "that the actual amount of work or material will correspond therewith." The estimates were made solely as the basis for the uniform comparison of bids. The plaintiff knew this. His contract called for the payment of a certain sum for each yard of masonry and excavation, and for each pound or ton of metal work. As the master finds, the plaintiff took the view that being paid by "quantity rate, additional quantities performed would be to his advantage." He expressed that view whenever occasion occurred throughout the summer and early autumn of 1911. He was informed that changes would be made. He was given the

fullest opportunity to make whatever examination he wished before his bid was accepted, and he relied on his own inspection. *Mabardy* v. *McHugh*, 202 Mass. 148, 151. See *Tryon* v. *Whitmarsh*, 1 Met. 1; *King* v. *Eagle Mills*, 10 Allen, 548

After changes were made and the extent of the excavation ascertained, he continued the work with knowledge of these facts and without making any complaint. Under such circumstances, he cannot ask for the cancellation of a contract which was fully understood and acquiesced in by him. *Brown* v. *Leach*, 107 Mass. 364. *Winston* v. *Pittsfield*, 221 Mass. 356.

The plaintiff was not deceived by the change in the location of the gatehouse from the lower to the upper side of the dam. Before filing his bid he was informed that this change was contemplated, and when told it would mean an increase of seven hundred cubic yards of masonry, he expressed satisfaction.

In July, 1911, it was decided to increase the size of the dam by changing its slope and making it heavier and thicker. The plaintiff assented to this alteration and approved of it. Whether this change resulted from the advice of the expert, Hazen, or from the discovery of loose rock which made it necessary to secure a more solid foundation, there was nothing in the transaction indicating deceit on the part of the commissioners or the engineers in charge. The plaintiff was in no way harmed by the fact that the dam was not built on the exact site shown on the plan. It was built on the site pointed out to him before he made his bid, and where it was "staked out," in the presence of his foreman. In addition to this, there was no evidence showing that this change in the location in any way affected the quantities of earth or rock excavation.

There was no mutual mistake such as to require the cancellation of the contract. The estimates were intended as approximations. This was known by defendant and plaintiff. There was no misunderstanding on this point. In *Long* v. *Athol*, 196 Mass. 497, the erroneous estimate was the basis of the plaintiff's contract. He made his bid relying on the accuracy of the estimate and it was a material element in the minds of both parties. In the case at bar, as before stated, the estimates were not relied on. Neither did they fix the entire price the plaintiff was to receive; they were used only for the purpose of establishing the unit price

of labor and material. *Winston* v. *Pittsfield, ubi supra,* and cases cited. See *Shriver* v. *Garrison,* 30 W. Va. 456, 476.

The plaintiff contends, he laid Class A concrete to the thickness of four feet on the face of the dam and has been paid for the thickness of one foot. He also seeks to recover for cement he was required to remove. The master found against him on both of these contentions. The concrete on the face of the dam was but one foot in thickness, and the cement was removed because it was defective. The evidence is not reported and the findings of the master must stand. *Rioux* v. *Cronin,* 222 Mass. 131.

The master found that the spillway was "extra work" not within the contract, and allowed the plaintiff compensation therefor on a *quantum meruit* basis. He further found that the plaintiff was entitled to recover for a certain amount of excavation on the core wall; and that he abandoned the contract without cause. These findings cannot be disturbed for the reason just stated.

The plaintiff excepted to the admission in evidence of his conversation with the engineer before the bid was submitted, when he was told that it had been decided to place the gatehouse on the "up-stream side of the dam." This evidence was clearly admissible on the question of fraud and mistake.

We have examined all the other exceptions of the plaintiff. As we find no reversible error in the conduct of the master, none of the exceptions can be sustained.

The plaintiff demurred to the defendant's cross bill referred to as "Defendant's counter claim against plaintiff;" from an interlocutory decree overruling the demurrer, he appealed. This question has not been argued and we treat it as waived. See *Torrey* v. *Parker,* 220 Mass. 520, 525; *De Veer* v. *Pierson,* 222 Mass. 167, 174.

The decree awarding the plaintiff the sum of $4,433.63, with interest from May 19, 1915, and costs taxed at $165.91, is affirmed. A decree is to be entered dismissing the cross bill.

*So ordered.*

*C. E. Bell,* for the plaintiff.

*T. B. O'Donnell,* (*T. D. O'Brien* with him,) for the defendant.