THOMAS CAVANAGH vs. TYSON, WEARE AND MARSHALL COMPANY.
TYSON, WEARE AND MARSHALL COMPANY vs. THOMAS CAVANAGH.

Suffolk.    March 22, 1917. — June 26, 1917.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

Contract, Avoidance by reason of mutual mistake, Construction, Rescission,
Abandonment. *Mistake. Waiver. Evidence*, Materiality. *Practice, Civil*,
Variance.

A contract can be rescinded by reason of a mutual mistake of fact by the parties
to it only when the mistake relates to a fact which is of the essence of the
contract.

A contract between a pile driver and a corporation, which provided that the pile
driver should furnish and drive a certain number of piles at a certain price per
pile for the foundation of a building being constructed by the corporation for
a third party "according to plans and specifications," was entered into after
an investigation by the pile driver as to the material into which the piles were
to be driven, and without any fraud, concealment or misrepresentation, inten-
tional or innocent, on the part of the corporation or of any of its employees.
Both parties afterwards discovered that the material into which the piles
were to be driven, instead of being soft, as they both mistakenly had be-
lieved, contained boulders and broken rock, which made the driving of the
piles difficult but not impossible. *Held*, that the mutual mistake of the par-
ties was not as to a fact which was of the essence of the contract.

At the trial of cross actions between the parties to the contract above de-
scribed, evidence that the corporation's president told the pile driver at a
time after the real character of the soil was discovered to "keep account of
day work until the piers are excavated," "to call it day work and keep
account of it, at the time," was *held* on the record to relate to a claim of the pile
driver "for extra money" to cover the extra expense of driving certain piles,
and not to warrant a finding of a termination of the contract by mutual assent,
especially when there was no evidence that the corporation's president had
authority so to assent on behalf of the corporation.

At the trial of the above described action, there was evidence that the corporation
agreed that, upon request by the pile driver, it would excavate to a certain
depth around certain piles, and that, after the unforeseen difficulty of driving
the piles was discovered, such requests were made by the pile driver which were
not complied with by the corporation, and it was *held* that such failure to ex-
cavate under the circumstances was not a breach of a term of the contract
between the parties, the performance of which was essential to the continu-
ance of the work by the pile driver, and did not give him a right to repudiate
the contract.

The question, what other remedies the pile driver might have under the contract
for such failure of the corporation to excavate when requested, not being raised
on the record, was not determined.

Where, at the trial of the action above described, a material issue was, whether the plaintiff had waived the making by the defendant of payments in accordance with the provisions of the contract, testimony of the vice president and manager of the defendant as to the method in which requisitions for payments submitted to the owner of the building, which included items for piles and for driving piles, were compiled, and the amount of work which had been done by the pile driver at various times when payments were due to him, was material and admissible, although the contract required payment to the pile driver according to the requisitions, no matter how they were compiled.

In a cross action by the corporation against the pile driver for failure of the pile driver to perform his contract and for damages resulting from his abandonment of it which required the corporation to complete it for the owner, an allegation in the declaration that the corporation had overpaid the pile driver was held to be a mere allegation of damage and to be treated as surplusage, so that failure to prove it could not be ruled as matter of law to constitute a variance.

CROSS ACTIONS OF CONTRACT arising out of claims of performance and of non-performance of a contract in writing by the provisions of which the plaintiff in the first action (hereinafter called the plaintiff) for an agreed price to be paid by the defendant in that action, (hereinafter called the defendant,) was to furnish and to drive piles for the foundation of the Boston Fish Market Corporation building on Pier 6 in that part of Boston called South Boston. Writs dated February 5, 1913.

The cases were referred to an auditor by whom they were heard together and, after the filing of his reports, were tried together before *Chase,* J. Findings of the auditor on the matter of excavation by the defendant, referred to in the opinion, were as follows: "Each pile was required to be of such length as to enable it to be driven to a solid foundation and was to be cut off by the defendant at a certain designated grade, known as grade 9, which was considerably below the surface of the pier. In order to cut the piles at the required grade, it would be necessary to excavate around and between the piles to the requisite depth. When the plaintiff began work, he had a conversation with one of the officers of the defendant company concerning such excavations, and it was finally agreed that he would proceed with the work without having the pier holes excavated in advance of the driving of the piles. In other words, the plaintiff, instead of requiring the defendant to excavate a series of holes approximately fourteen feet square and to the depth of grade 9, undertook to drive the piles through from the surface. This agreement, however, was only a tentative arrangement and it was understood and agreed that if the plaintiff

found that the piles could be driven more advantageously after excavation had been made, the defendant was to do it upon his request."

There was evidence that, after the difficulty of driving the piles through the stony soil was discovered, the plaintiff asked for excavations which were not made by the defendant.

The testimony of the witness Marshall, the vice president and manager of the defendant, excepted to by the plaintiff, related to the manner in which he had compiled the requisitions for payments which he submitted to the owner and which included items for piles and driving piles. The plaintiff's objection to this evidence was that it was immaterial how the compilation was made, because the contract required payment to him of eighty per cent of the amount stated in the requisitions, no matter how they were made up.

Other testimony of Marshall excepted to by the plaintiff related to the admission of evidence as to the amount of work which had been done by the plaintiff at times when amounts due to him were to be computed.

Other material evidence is described in the opinion. After submitting to the jury a special question, described in the opinion, the judge ordered a verdict for the defendant in the first action and for the plaintiff in the second action and reported the cases, under the stipulation described in the opinion, for determination by this court.

*V. J. Loring & W. R. Bigelow,* for Cavanagh.

*W. F. Frederick,* (*C. M. Pratt* with him,) for the Tyson, Weare and Marshall Company.

PIERCE, J. These are cross actions of contract arising out of the same transaction. They were tried together before an auditor and before a jury.

The plaintiff Cavanagh declares upon two counts. In the first count he alleges the making of a contract between the plaintiff and the defendant on October 23, 1912, for the furnishing and driving of spruce piles for the foundation of the Boston Fish Market building on Pier No. 6, South Boston. In this count the plaintiff alleges in substance that he was induced to enter into this contract by misrepresentations made to him by officers of the defendant company; that relying upon such representations he performed

a part of the work covered by the contract and continued at work until it was impossible to proceed further by reason of the soil in which the piles were to be driven being of a different character from what it was represented to be by the defendant. The plaintiff further alleges four breaches of the contract on the part of the defendant company, the first of which, namely, "that the defendant agreed to make certain excavations, which it refused and neglected to do," is the only one argued. He then alleges that because of these breaches of the contract on the part of the defendant company, he has been forced to cease work under said contract and has suffered damages which he seeks to recover in this action. The second count for the same cause of action was amended before the trial in accordance with the terms of the auditor's report, and now consists of an account for labor and material furnished by the plaintiff to the defendant to the amount of $14,323.12. The defendant's answer is a general denial.

The plaintiff's claim in the second action is set forth in a declaration containing two counts. The first alleges the making of a contract between the plaintiff and the defendant, Cavanagh, on November 22, 1912, under the terms of which the defendant undertook to furnish and drive all the piles required for the foundations for two buildings on the Boston Fish Market Pier in South Boston; the abandonment of the contract by the defendant and an overpayment by the plaintiff to the defendant at the time he abandoned the contract; a specification of the damage which it alleges it sustained in completing the work, and a claim for the penalty provided by the contract in case of delay. The second count for the same cause of action is on an account annexed. The answer of the defendant was a general denial. And he further answered that the contract "was entered into under a mutual mistake of fact in the belief and understanding by both parties that the fill where the plaintiff [in the first action] was to drive piles under said contract was a mud and dirt fill, whereas in fact, unknown to both parties, said fill had been made to a large extent with stone rip-rap, boulders, concrete, brick and other debris, and was unsuitable for driving piles; wherefore this defendant says that in equity he ought to be absolutely and unconditionally relieved against the plaintiff's claim and cause of action."

Under the bid and acceptance, Cavanagh began work on Novem-

ber 5, 1912, and continued to perform work under that contract, or under it as modified by the printed formal contract dated November 12 and executed November 22, 1912, until February 5, 1913. On the last named day he wrote the company "I decline to further attempt to carry out my contract with you for furnishing and driving piles for the two buildings on Pier No. 6, South Boston, owing to conditions with which you are fully familiar. . . ." and thereupon ceased work and has done nothing further toward the completion of the contract.

At the trial before the auditor and before the jury Cavanagh contended, and introduced evidence by which he sought to prove, that the original contract on the bid and acceptance as well as the written contract dated November 12 were void, because of fraud or because of mutual mistake; that all the contracts were abandoned by both parties; and that the contract of November 12, if ever in force, was broken by the company by its failure to make payments to Cavanagh and to excavate as it was required to do by the terms of the contract. At the close of all the evidence the presiding judge ruled that "there was no evidence to warrant submitting the case to the jury on the questions of mistake, abandonment, and breach of contract. . . ." The jury answered in the affirmative the question "Did Cavanagh waive breaches of the contract, if any, in the matter of payments?" The judge thereupon ordered a verdict for the defendant in the first case and for the plaintiff in the second case, and reported the cases to the Supreme Judicial Court upon the following terms and conditions: "If the rulings made and directions and instructions given are correct, judgments are to be entered upon the verdicts as rendered. If upon all of the evidence the ruling of the court directing the verdicts was wrong, the verdicts are to be set aside and judgment is to be entered for the plaintiff in the case of *Cavanagh* v. *Tyson, Weare & Marshall Co.* in the sum of $14,323.12, with interest thereon from the date of the writ and in the case of *Tyson, Weare & Marshall Co.* v. *Cavanagh*, judgment is to be entered for the defendant. If the court erred in his rulings upon the admission or exclusion of evidence or in his instructions to the jury upon the issue which was submitted, then a new trial is to be had. If the court erred in his ruling upon the matter of variance between the proof and the pleadings in the

second case, then a new trial is to be had in the second case."
We shall consider the contentions of Cavanagh in the order of his
argument.

Upon the question of fraud or mistake the material facts are
not in dispute, and are in substance that the Commonwealth of
Massachusetts previous to September, 1912, had made a lease of
Pier No. 6 to the Boston Fish Market Corporation for the purpose
of building a fish market thereon; that in September, 1912, the
Fish Market Corporation awarded a contract to the defendant
and plaintiff company to build two buildings upon said pier
called buildings No. 1 and No. 2; that the company previous
to September 26, 1912, had sent to the plaintiff, in common
with other pile drivers, a postal card requesting bids on the
piling for the Boston Fish Market building with the statement,
"plans and specifications at our office;" that bids were wanted
before September 27, 1912; that the plaintiff had a conversation
with Marshall of the defendant company; that the plaintiff was
told by Marshall that the defendant could get it done for
$6.20 per pile, that if he wanted it at that price he could have
it; that the plaintiff stated he "wanted to look into the job
a little more," that he wanted to go down and see the ar-
chitects; that Marshall said "Go ahead down and see them;
you know who they are; they are on the plans;" that the plaintiff
then went to the office of the architects, Monks and Johnson; that
Monks told the plaintiff to go to H. S. Adams, that Adams had
full charge of the pile driving and was employed by the Boston
Fish Market Corporation to look after that end of the work;
that in consequence of what Adams said the plaintiff went to the
office of the Directors of the Port of Boston; that the plaintiff
there saw plans and specifications for the construction of the pier
and was furnished with two copies of the plans; that these plans
showed that the pier was filled in with mud and clay; that the
plan reads "to be filled with dredged material from dock and
trench;" that on the plan were records of borings showing only
mud and clay in the dock and trench from which the fillings were
taken. After examining the plan and specifications the plaintiff
returned to the office of the defendant, told them he would take
the job, and on the same day wrote a bid which was accepted.
It reads "I will furnish and drive spruce piles according to plans

and specifications in foundation of Boston Fish Market building, for the sum of Six Dollars and Twenty Cents ($6.20) each. I agree to deduct Thirteen Cents (13c) per foot for all piles driven less than 45′ in length." On November 5, 1912, plaintiff began to drive piles and immediately discovered that the fill was of a different character from that disclosed in the plans which he obtained from the Port Directors. He found that there was a top layer of gravel which the plan did not show which caused the driving to be more difficult and the piles began to "broom out" at the bottom, a splitting, shattering or shredding of the pile caused by the end coming in contact with some solid substance. These obstructions turned out to be stone rip-rap of large dimensions, deposited there by the contractor who put in the fill for the Commonwealth.

The plaintiff did not discover that there were large stones in the fill until the last part of December, 1912, and there is no evidence to warrant a finding that the defendant had greater knowledge of the presence of rocks and boulders, or had greater opportunity of acquiring knowledge of the condition of the fill than the plaintiff. There is no evidence whatsoever to warrant a finding that the defendant intentionally or innocently misrepresented to the plaintiff any fact concerning the nature of the fill. Nor is there evidence to sustain a finding that the defendant intentionally concealed any material fact concerning which it had reason to know the plaintiff was ignorant. When the bid was made and accepted for the driving of the piles, the plaintiff and the defendant were ignorant of the character of the fill, but each believed from what was shown on the plans in the office of the Directors of the Port that the fill where the piles were to be driven was composed of the material dredged from the dock and trenches around the pier, which was shown by the plans to be of soft material. Between the time of the acceptance of the bid and the execution of the formal instrument of contract, the plaintiff and the defendant had learned that the character of the soil was different from that shown on the plans but both remained ignorant of the presence of boulders and broken rock in the fill where the piles were to be driven.

Upon the facts the question presented is whether the erroneous belief of the plaintiff and the defendant is a mutual mistake of fact

of sufficient importance to make the contracts void. Such result can follow only when the mistake relates to a fact which is of the very essence of the contract, the material element in the minds of both parties, and material in the sense that it is one of the things contracted about. *Long* v. *Athol,* 196 Mass. 497. *Miles* v. *Stevens,* 3 Penn. St. 21. 45 Am. Dec. 631, note. *Steinmeyer* v. *Schroeppel,* 226 Ill. 9. 117 A. S. R. 233, note.

In the case at bar the character of the fill through which the piles were to be driven was of importance only in the determination of the price to be demanded and paid for the performance of the work. Had the burden of performance proved less than anticipated it scarcely will be claimed that the defendant could in an appropriate action have had relief from the contract through rescission or to recover any excess in payment over reasonable compensation. Yet, such would be the defendant's right if the contract were void *ab initio. Sherwood* v. *Walker,* 66 Mich. 568. In the case at bar the mistake of fact is collateral to the essential thing contracted about and therefore does not invalidate the contract. *Hecht* v. *Batcheller,* 147 Mass. 335. See *Long* v. *Athol, supra; Rowe* v. *Peabody,* 207 Mass. 226; *Young* v. *Holyoke,* 225 Mass. 140. *Winston* v. *Pittsfield,* 221 Mass. 356.

The evidence would not warrant a finding that the contract was terminated by mutual assent on January 6, 1913. The direction of the president of the company on that day to the plaintiff to "keep account of day work until the piers are excavated," "to call it day work and keep account of it, at the time," plainly relates to the claim of the plaintiff "for extra money to cover the extra expense of driving these piles" as is shown by the letter of the plaintiff dated January 1, 1913, and again by his letter of January 30, 1913, wherein he stated " I do not see why there should be any reason to arbitrate on this line, and will, within a short time, send you my bill for extra work on Building No. 1, as far as the work has progressed." Moreover, there is no sufficient evidence to warrant a finding that the president had the authority to agree to a determination of the contract or to prove that the company had knowledge that its president had assumed the power to end the existing contract and to make a new and essentially different contract in substitution therefor. The finding of the jury that Cavanagh waived breaches, if any, in matters

of payment excludes from consideration the argument that the company broke the contract upon which it now relies as to amount of payment, time of payment, and method of payment. It follows that the plaintiff had no right to cease to perform the work which he had agreed to perform under the contract because of any failure of the defendant to make payments in accordance with the terms of the contract.

We are of opinion that the failure to excavate under the conditions disclosed in the evidence was not the breach of a term of the contract, the performance of which was essential to the continuance of the work of Cavanagh. It follows that there was therefrom no right to repudiate the contract and the occasion does not demand a decision whether other remedies were given under the terms of the contract.

The requests, so far as they properly could be given, were fully covered in the charge to the jury. The instructions upon the issue submitted were accurate, clear and explicit, and had the sanction and authority of *Farlow* v. *Ellis,* 15 Gray, 229.

The evidence of Marshall was admitted rightly upon the issue of waiver of payments in accordance with the terms of the contract, as also upon the question whether Cavanagh had entitled himself to full payments under the contract.

The request to rule in the second action that there was a variance between the allegations and proof was denied rightly. The allegation of overpayment by the plaintiff to the defendant at the time the defendant abandoned the contract was an allegation of damages resulting from such breach, and as such was an immaterial and surplus allegation not necessary to sustain the action. It therefore need not be proved and should be treated as surplusage. *Little* v. *Blunt,* 16 Pick. 359, 365. *Maxwell* v. *Maxwell,* 31 Maine, 184, 187. Full performance of the oral agreement to excavate was not a condition precedent to the maintenance of the plaintiff's right to the performance of the contract by Cavanagh, and the absence of such an allegation could be taken advantage of only by a demurrer.

We have examined the entire record and find no reversible error. In accordance with the terms of the report, judgments are to be entered upon the verdicts as rendered.

*So ordered.*