WRIGHT AND PIERCE, Plaintiff, Appellant,

v.

TOWN OF WILMINGTON, MASSACHUSETTS, Defendant, Appellee.

No. 5727.

United States Court of Appeals First Circuit.

Heard March 7, 1961.

Decided May 5, 1961.

**1.** Bannister et al. v. United States, 5 Cir., 1958, 262 F.2d 175; United States v. Carruthers et al., 9 Cir., 1955, 219 F.2d 21.

William L. Smith, Boston, Mass., for appellant.

Charles M. Ewing, Boston, Mass., for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

ALDRICH, Circuit Judge.

Pursuant to a vote taken at a town meeting of defendant-appellee Town of Wilmington, Massachusetts, hereinafter defendant, a committee composed of the three assessors and the town manager entered into a written contract with the plaintiff-appellant, a Maine corporation, which had successfully bid to "tax-map" the town for $11,350. Prior to the execution of the contract one of the assessors, hereinafter the assessor, informed plaintiff that his best estimate of the number of individual parcels or properties was about 4500.[1] The assessor showed the plaintiff the records, so far as relevant, but the plaintiff did not examine them. The assessor stated that no examination would reveal the true number because of the records' confused condition.[2] No reference to the number of parcels was made in the contract. After work had been going on for some months, it was discovered that the true number was considerably in excess of 4500. At one time plaintiff thought that it might run to 6000 or 7000. (The figure eventually proved to be 5820.) When the plaintiff came to this conclusion it went to the assessor and told him, and stated that it was losing money on the contract. The court found, on conflicting testimony, that the plaintiff "was requested to complete the work pending later negotiation."[3] When the work was completed defendant refused to pay in excess of the original price. After a trial without jury the court held that the defendant would have been obligated to pay an additional $8,050 but for the fact that it was relieved therefrom by virtue of Mass. Gen.Laws, ch. 44, § 31.[4] Plaintiff appeals.

The statute relied upon by the court is not happily drawn, and its con-

---

1. There was some disagreement in the testimony, the assessor stating that his memory was that he said 4500 to 5000, and plaintiff's witnesses stating variously 4000 to 4500, and about 4300. The court, sitting without jury, found the figure to be "about 4500."

2. There is some suggestion in the testimony that a detailed examination would have permitted a more accurate estimate, but we take it that such examination would not only have been impractical in advance, but was part of what plaintiff was employed to do.

3. The assessor's alleged promise was, "We'll negotiate * * * when we have the final number of parcels."

4. "No department financed by municipal revenue, or in whole or in part by taxation, of any city or town, except Boston, shall incur a liability in excess of the appropriation made for the use of such department * · * *."

struction and application admit of some complexities. Cf. Salisbury Water Supply Co. v. Town of Salisbury, Mass.1960, 167 N.E.2d 320. As a federal court we prefer not to interpret it, if it is not necessary to do so, and we believe it is not.

██ The plaintiff argues here, although it apparently did not below, that the assessor's promise to "negotiate" created a new contract. We cannot agree. The committee empowered to act for the town consisted of four persons. Assuming the assessor purported to make a firm agreement for additional compensation,[5] he clearly did not comply with defendant's by-laws, which required that all contracts involving more than $500 be in writing and signed by a majority of the committee duly authorized. Very possibly majority action would be required even without such a provision. Cf. Barnard v. Inhabitants of Shelburne, 1915, 222 Mass. 76, 79, 109 N.E. 818; Murdough v. Inhabitants of Revere, 1896, 165 Mass. 109, 112–113, 42 N.E. 502. In any event, such limitations on the contracting authority of a town's officers are unquestionably valid and binding on parties dealing with the town. McGovern v. City of Boston, 1918, 229 Mass. 394, 397, 118 N.E. 667. Accordingly, the assessor was without authority to make the alleged contract.[6]

Before dealing with plaintiff's principal contention, that it is entitled to set the contract aside because of a mutual mistake of fact, and to recover in quantum meruit, we will mention briefly the court's finding that defendant's original representation as to the number of parcels was "a fraud or a constructive fraud" upon the plaintiff. We agree with the defendant that it was unjustified. Twice during the hearing the court said that it entertained no thought that anyone had "cheated." The statement as to the number of parcels was given and understood, not as a positive affirmation, but simply as the assessor's best estimate. The assessor explained his basis for the figure, and plaintiff points to no evidence permitting a finding that the estimate was not made in good faith. It is clear that the court's pronouncement of "fraud or constructive fraud" was no more than the court's opinion of the defendant's insistence upon the contract price after discovery of the error in its original estimate.

██ This is not a proper case for the court in effect to reform the contract by granting a rescission and permitting recovery in quantum meruit because of a mutual mistake of fact. Concededly, the actual number of parcels was considered by plaintiff to be "fairly vital to our making a proposal," [7] and concededly, too, the number turned out to be substantially greater than was anticipated by either party. But this is not enough. Plaintiff realized fully that the actual number was unascertained. It was additionally warned that the estimate was not reliable when the assessor told its representative that the records were in such poor shape that little could be learned by looking at them. Being aware of this uncertainty, plaintiff could have included in its bid, or insisted that the contract include, a provision to guard against too great an error. And, in fact, its representative testified that "whenever possible" plaintiff did tie its contract price to what

---

5. We do not consider defendant's contention that even as a firm commitment an agreement to "negotiate" is too indefinite to be enforced. But cf. Cygan v. Megathlin, 1951, 326 Mass. 732, 96 N.E.2d 702; Martiniello v. Bamel, 1926, 255 Mass. 25, 150 N.E. 838. Nor do we consider whether an agreement to pay more because there were more parcels than expected would warrant a finding which represented an increase of 70%, when the increase in the number of parcels was only 30%. But cf. Martiniello v. Bamel,

supra, 255 Mass. at page 27, 150 N.E. at page 839.

6. While the other committee members may have generally deferred to the assessor's judgment, there was no evidence that they delegated, or could have delegated, their authority to him, or that they authorized or ratified the assessor's undertaking.

7. Total acreage was, admittedly, also a factor. But the more parcels, the more entries would have to be made on the maps.

would ultimately prove to be the true number of parcels. Plaintiff did not do so here. Doubtless this was because, as its principal officer testified, plaintiff was particularly anxious to obtain this contract and enter the Massachusetts field.

██ It is not always clear what constitutes "a mutual mistake of fact of sufficient importance to make the contracts void. Such result can follow only when the mistake relates to a fact which is of the very essence of the contract, the material element in the minds of both parties, and material in the sense that it is one of the things contracted about." Cavanagh v. Tyson, Weare & Marshall Co., 1917, 227 Mass. 437, 443–444, 116 N.E. 818, 820. In Cavanagh the court held that a mutual mistake as to the character of the ground (rock fill instead of the expected mud) into which piles were contracted to be driven, "was of importance only in the determination of the price to be demanded," (ibid.) and insufficient to warrant rescission. On the other hand, in Long v. Inhabitants of Athol, 1907, 196 Mass. 497, 82 N.E. 665, 17 L.R.A.,N.S., 96, cited by the court in Cavanagh, rescission was allowed where the mistake related to the amount of yardage to be excavated by the plaintiff contractor. Cf. Golding v. 108 Longwood Avenue, Inc., 1950, 325 Mass. 465, 91 N.E.2d 342. However, it is not necessary to decide on which side of this line the present case falls. Plaintiff not only had reason to suspect that the estimate was not accurate,[8] but also failed to request the protection against inaccuracy which it utilized in such instances "whenever possible." Plaintiff cannot now claim as material, or ask an equity court to supply, what it intentionally omitted in order to obtain the contract. We do not subscribe to the district court's pronouncement that further payment was "morally due."

Judgment will be entered affirming the judgment of the District Court.

---

8. This might be contrasted to the situation in Athol, where the court pointed out that there was no reason to suppose the calculations made by defendant's engineer were not approximately correct. 196 Mass. at page 505, 82 N.E. at page 668.