**BROWN–McKEE, INC., Appellant,**

v.

**WESTERN BEEF, INC., Appellee.**

No. 8605.

Court of Civil Appeals of Texas, Amarillo.

June 30, 1976.

Rehearing Denied July 26, 1976.

Key, Carr, Evans & Fouts (Donald M. Hunt), Lubbock, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins (Wayne P. Sturdivant), Amarillo, for appellee.

ROBINSON, Justice.

Plaintiff Brown-McKee, Inc., as contractor, and the predecessor of defendant Western Beef, Inc., as owner, made a written contract for the construction of an addition to owner's feed lot. The feed lot was completed and the contract price paid. Brown-McKee filed this suit for the expenses which it claims it incurred because of the presence of rock underlying the land, (1) alleging that defendant's president fraudulently induced it to enter the contract by representing that a survey had been made which showed that there was no rock underlying the land when he knew that rock

was there and (2) alleging, in the alternative, mutual mistake as to the presence of rock. The trial court rendered judgment on a jury verdict for defendant Western Beef, Inc. Plaintiff appeals. Affirmed.

The portion of plaintiff's pleadings which alleges a fraudulent representation follows:

. . . Plaintiff was induced to enter into such contract by the fraud of Defendant. In this connection, it was represented to Plaintiff, prior to execution of the contract, after express inquiry had been made by Plaintiff as to the existence or not of rock, that a survey had been made of the land on which the feed lot was to be constructed, that such survey, including test holes showed that there was no rock underlying such land. Such representation was made by the President of Union County Feed Lot, Inc., H. A. Foster, at a time when Plaintiff did not know that such rock was underlying such land, but which fact was well known to Foster.

The contract in question was executed on September 11, 1968, and provided that all work be substantially completed by October 31, 1968, and for final completion and clean up by November 10, 1968. It provided for monthly partial billings of the contract price. The evidence shows that Brown-McKee's representatives William Schaumann and Paul Furr went to the site of the feed lot and looked it over for approximately two hours on the day the contract was executed. H. A. Foster, the Chairman of the Board for Western Beef, and R. L. Bland, the Vice President of Western Beef, among others, were present at the negotiations. Within ten days after execution of the contract and almost immediately on beginning construction, Brown-McKee encountered rock. The first subcontractor on the job, who was to dig post holes, quit after three or four working days because he was running into rock which was breaking up his equipment. Brown-McKee did not seek to rescind the contract but continued to perform under it, sending partial billings as provided for in the contract on September 30 and October 31, 1968. Brown-McKee finished the work within the time provided by the contract. The contract price, as well as the price for certain extra construction ordered and performed under the contract, was paid by defendant Western Beef. In November or December and after the completion of the contract, Brown-McKee's representative in a telephone conversation with Foster for the first time sought to claim additional expenses because of unforeseen rock. On January 10, 1969, more than 50 days after completion of the contract, the first bill for additional expenses claimed because of the presence of rock was sent to Western Beef. Western Beef refused to pay for the expenses over the contract price, which plaintiff alleges it incurred because of the presence of underlying rock.

Plaintiff contends that the court erred in not rendering judgment for it for the expenses incurred because of rock on a theory of fraud in the inducement of the contract. It contends that all of the elements of actionable fraud were either found by the jury or established as a matter of law. The elements of actionable fraud in Texas were set out by the Supreme Court in *Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas,* 516 S.W.2d 138, 143 (Tex. 1974), quoting with approval the following language from *Wilson v. Jones,* 45 S.W.2d 572, 573 (Tex.Com.App.1932, holding approved):

The authorities announce the general rule that to constitute actionable fraud it must appear: (1) That a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury. The gist of an action based upon fraud is found in the fraud of defendant and damage to plaintiff. Each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery. 26 C.J.

pp. 1062, 1063, 1064, and 1065; *Wortman v. Young* (Tex.Civ.App.) 221 S.W. 660.

In the case before us, the question of the alleged representation by Foster was submitted to and answered by the jury as follows:

### SPECIAL ISSUE NO. 1

(a) Do you find from a preponderance of the evidence that defendant, its agents or employees, represented to plaintiff that there was "no rock" underlying the construction site?

Answer "Yes" or "No."

Answer: Yes.

The jury also found that such representation was material, false, and made with the intention that it be acted on by plaintiff; and that plaintiff did act in reliance on the representation to its damage. The jury refused to find that the defendant knew that the representation was false. No issue was requested and none submitted inquiring whether the representation was made recklessly without any knowledge of its truth and as a positive assertion. On appeal plaintiff contends that this second alternative of element No. (3), that the representation was made recklessly without knowledge of its truth and as a positive statement, was established as a matter of law.

Plaintiff went to trial on its Original Petition, which contains only the allegation that Foster represented that a survey showed no rock at the construction site, when it was "well known" to him that there was rock under the land. Plaintiff's pleadings contain no allegation that the representation was made recklessly and without knowledge of its truth. "Plaintiff's Motion to Disregard Special Issue 5 and Motion for Judgment" relies solely on the jury findings of fraud and contains no contention that an element not submitted to the jury was established as a matter of law. Plaintiff's Amended Motion for New Trial alleges that the jury found all of the elements in its answers to the first Special Issue, and does not allege that an element of fraud was established as a matter of law.

Plaintiff did not urge what it terms its "reckless representation" fraud theory in the trial court, but asserts it for the first time on appeal. An appellant is limited to the theories upon which the case was tried, and he may not urge new theories for the first time on appeal. *The State of California Department of Mental Hygiene v. Bank of the Southwest National Association,* 163 Tex. 314, 354 S.W.2d 576 (1962); *Birge v. Toppers Menswear, Inc.,* 473 S.W.2d 79 (Tex.Civ.App., Dallas 1971, writ ref'd n. r. e.). Nevertheless, the point, if before us, must be overruled.

To show a representation by Foster, Brown-McKee offered the testimony of William Schaumann, Brown-McKee's agent, who solicited the contract, and Paul Furr, Vice President of Brown-McKee. Schaumann testified to Foster's statements concerning rock during the negotiations at the feed lot as follows:

And I recall that Mr. Foster fielded this question at the time that, no, that there was not any rock in the immediate area of our proposed construction, and that he had knowledge of. And I don't know the nature of the survey, or who ran it, or why they ran it, but that a team had explored this area sometime previously.

And as I recall, I can't say that the word "drillings" was used, but there was some excavations made on an orderly point to sample the swirls in this area, to see if there was rock there. And he said there was no indication of any rock in this area.

Paul Furr, the Vice President of Brown-McKee, testified only that Foster related that "he had had surveys run and they didn't show there to be any rock in that area."

Brown-McKee also offered the deposition testimony of R. L. Bland, Western Beef's Vice President. Bland testified that they had a survey made before the feed lot company bought the property; that the survey was made by the soil conservation people for the man who owned the land; that the man doing the survey dug several strings of

holes out across the "whole set of property"; and that the survey showed no more rock than was visible to the eye.

To show that the representation was recklessly made, Brown-McKee relies on Foster's statements at the trial as follows:

. . . I can't see down past the dirt.

\* \* \* \* \* \*

And I am no judge of what is under the earth. You know, all I can tell you is what we had.

and

I had no idea they would get that much rock.

█ These statements, in context and together with the rest of the testimony, do not establish as a matter of law that Foster made the representation as a positive statement and that he made it recklessly without knowledge of its truth. The evidence, at most, raised a fact issue which was not submitted to the jury.

Rule 279, Texas Rules of Civil Procedure, provides in part:

Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; but where such ground of recovery or of defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of recovery or of defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request, or objection, and there is evidence to support a finding thereon, the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment.

Since the specific issue on the omitted alternative element of fraud was neither requested nor submitted, and written findings were neither requested by the parties nor made by the trial court, the issue is deemed to have been found by the court in such a manner as to support the judgment and thus, in this case, adversely to plaintiff.

We conclude that plaintiff has failed to establish all the elements of a cause of action for fraud in the inducement.

Pleading in the alternative, plaintiff alleges that if Foster did not know of the existence of rock underlying the construction site, then the contract was entered under a mutual mistake of fact. It contends that, in that case, the contract does not cover the extra materials and labor made necessary by the existence of rock and either defendant has impliedly promised to pay for the reasonable value of that material and labor or, in the alternative, is unjustly enriched.

█ There is a distinction between extra work and work provided for in the contract. Extra work is work arising outside and independent of the contract, something not required in its performance. *City of Houston v. L. J. Fuller, Inc.*, 311 S.W.2d 285 (Tex.Civ.App., Houston 1958, no writ). In the case before us, the work and consequent expense incurred in digging in rock was necessary in the performance of the very thing which Brown-McKee contracted to do. It was an incident of the construction of the addition to the feed lot.

The facts in *City of Dallas v. Shortall,* 131 Tex. 368, 114 S.W.2d 536 (1938) are in some respects similar to those before us. There, the plaintiff sought to recover the expense incurred when the formation through which he was to build a tunnel was found not to be solid rock as anticipated. The court in *Shortall* said that a person who agrees to do for a fixed sum a thing possible to be performed will not be excused or become entitled to additional compensation because unforeseen difficulties are encountered. It held that to justify recovery in such cases some element of deception which in contemplation of law is fraudulent or amounts to bad faith must be proved. In the case

before us the plaintiff has failed to prove that defendant acted in bad faith or made fraudulent misrepresentations and has not established that defendant had information which it was under an obligation to disclose, but withheld.

Plaintiff's evidence shows that a "rock clause" is a common clause in construction contracts of this nature but it does not contend that the parties agreed on such a clause, which would have provided for additional compensation if rock were encountered, and it does not contend that such a clause was omitted from the contract by mistake. The mistake of fact concerning the presence of underlying rock at the site did not go to the substance of the contract or its subject matter, but went to its inducement only. The rule in this regard is stated in 13 T.J.2d Contracts § 255 pp. 477, 478, as follows:

> To enable a party to a written contract to be relieved from liability thereunder on the ground of a mutual mistake of fact, the mistake in question must deal with a material part of the contract itself. That is, the mistake must involve the subject matter of the contract and the substance thereof; it may not be related to a mere collateral matter, such as the inducement for the agreement.

Cavanagh v. Tyson, Weare & Marshall Co., 227 Mass. 437, 116 N.E. 818 (1917) involves facts similar to those before us. There the plaintiff sued the defendant for the additional cost of driving piles for construction of buildings on a pier on the grounds that the plans available in the office of the port directors indicated that the soil was soft and easily penetrable. The soil in fact consisted largely of rock through which it was difficult to drive piles. The court said:

> Upon the facts the question presented is whether the erroneous belief of the plaintiff and defendant is a mutual mistake of fact of sufficient importance to make the contracts void. Such result can follow only when the mistake relates to a fact which is of the very essence of the contract, the material element in the minds of both parties, and material in the

sense that it is one of the things contracted about. * * *

> In the case at bar the character of the fill through which the piles were to be driven was of importance only in the determination of the price to be demanded and paid for the performance of the work. Had the burden of performance proved less than anticipated it will scarcely be claimed that the defendant could in an appropriate action have had relief from the contract through rescission or to recover any excess in payment over reasonable compensation. . . . In the case at bar the mistake of fact is collateral to the essential thing contracted about and therefore does not invalidate the contract.

Plaintiff cites the case of Mason v. Peterson, 250 S.W. 142 (Tex.Com.App.1923, judgment adopted), which involves a misrepresentation concerning land conveyed. There are numerous Texas decisions holding that a misrepresentation by the vendor regarding the quantity of land sold or the quantity of a particular character is a material representation going to substance of the contract itself and will entitle the vendee to equitable relief. Such cases do not control the question before us.

■ We conclude that the trial court did not err in denying plaintiff recovery on its theory of mutual mistake.

■ Brown-McKee by appropriate point of error challenges the legal and factual sufficiency of the evidence to support the submission of and jury answer to Special Issue No. 5. In response to that issue, the jury found that Brown-McKee failed to exercise reasonable diligence to discover the presence of rock before it commenced work under the contract. The evidence bearing on this issue is in conflict, and includes lengthy testimony concerning the nature of the site and the extent of the visible outcroppings of rock in the area. We will not detail it here. After considering the evidence in the light most favorable to the verdict, we find that there is some evidence to support the submission of the issue and, after considering all of the evidence includ-

ing that opposed to the jury answer, we conclude that the evidence is sufficient to support the answer, and that the answer is not against the great weight and preponderance of the evidence.

The holdings on the questions of fraud and mutual mistake are dispositive of the case before us, and we do not reach defendant Western Beef's contentions that Brown-McKee is precluded from recovery because it proceeded to incur damages after it should have known and after it knew of the presence of rock. Nor do we reach plaintiff Brown-McKee's remaining points of error.

The judgment of the trial court is affirmed.