Homer G. MAXEY et al.,
Appellants-Appellees,

v.

TEXAS COMMERCE BANK OF LUB-
BOCK, Texas (formerly Citizens Nation-
al Bank of Lubbock), Appellants-Appel-
lees.

No. 8834.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 16, 1978.

Rehearing Denied Sept. 18, 1978.

Simon & Simon, Harold D. Hammett, Mike Liles, Fort Worth, for Homer G. Maxey, et al.

Jones, Trout, Flygare & Moody, Charles B. Jones, Lubbock, Shafer, Gilliland, Davis, Bunton & McCollum, Inc., Perry Davis, Jr., James M. O'Leary, Odessa, for Citizens National Bank.

ROBINSON, Chief Justice.

This suit was brought by plaintiffs Homer G. Maxey and wife, Melba Maxey, William Goodacre and wife, Glendell Goodacre, and Tommy Elliott and wife, Carla Jean Elliott, against Texas Commerce Bank of Lubbock, Texas (formerly Citizens National Bank of Lubbock), alleging that the Bank failed to exercise good faith in a private foreclosure sale of stock in plaintiffs' closely held corporations. The jury returned a verdict for plaintiffs. Both parties appeal from the judgment entered by the trial court.[1] Reversed and remanded.

---

1. In a prior trial of this cause against the Bank and certain individual Bank officers and agents, plaintiffs were granted a judgment against the Bank for actual and exemplary damages. At the close of the plaintiffs' evidence, all defendants except the Bank were granted instructed verdicts. Judgment was entered on the jury verdict against the Bank for $913,378.53 actual damages and $1,500,000 exemplary damages. On appeal, the judgment against the Bank was reversed and remanded because of the insufficiency of the evidence to support certain material jury findings. *Citizens National Bank of Lubbock v. Maxey,* 461 S.W.2d 138 (Tex.Civ. App.—Amarillo 1970, writ ref'd n. r. e.). Plaintiffs did not appeal from the judgments in favor of the individual defendants.

Upon remand, the trial court granted the Bank's motion for summary judgment on the grounds that the plaintiffs' cause of action was barred by the doctrine of res judicata because all of the individual officers of the Bank had been exonerated at the first trial. This Court affirmed the summary judgment. *Maxey v. Citizens National Bank of Lubbock,* 489 S.W.2d 697 (Tex.Civ.App.—Amarillo 1972). The Texas Supreme Court reversed the summary judgment and remanded the cause for a new trial

Plaintiffs went to trial on their Sixth Amended Original Petition. The plaintiffs alleged that prior to October 1962, Homer Maxey was induced to bring his banking business to the defendant Bank by an offer of an unsecured line of credit up to $1,000,000. At that time Maxey owned several urban properties in Lubbock, Texas, through control of Maxey Lumber Company and Plaza Building Corporation, two closely held corporations. Maxey was in the process of trading his urban holdings for rural properties to develop a cattle raising business consisting of several large ranches and a feedlot operation. During the period October 1962 through January 1966, Maxey negotiated numerous loans from defendant Bank and was required to give the Bank mortgages and pledges of stock in both Maxey Lumber and Plaza. Plaintiffs' petition concedes that Maxey's indebtedness to the Bank totaled approximately $1,200,000. The Bank's security for this indebtedness included more than 35,000 acres of farm and ranch land in three states, and at least 1600 head of cattle on the ranches.

Plaintiffs' petition further alleges that the Bank persistently attempted to exert control over Maxey's holdings and that Maxey executed the security agreements under threat of foreclosure. On February 16, 1966, only a few hours after Maxey refused to execute a power of attorney over his properties in favor of the Bank, the Bank instituted foreclosure proceedings on all of the collateral held as security for the payment of plaintiffs' indebtedness. Plaintiffs alleged that the Bank failed to exercise its contractual obligation to dispose of the collateral in good faith and did not receive adequate consideration for the sale of the foreclosed assets. The stock of Plaza Building Company was sold for $749 at private sale on the afternoon of February 16, 1966, to Monterey Lubbock Corporation, a corporation owned by officers and agents of the Bank. Twenty-three thousand, one hundred and twenty-five (23,125) shares of Maxey Lumber Company stock were sold to the Bank for $231,000.

The plaintiffs sought judgment for actual damages of at least $5,862,893, representing the value of the collateral, less the indebtedness owed to the Bank. Plaintiffs also prayed for exemplary damages of at least $10,000,000 and prejudgment interest from the date of foreclosure. In response to special issues submitted, the jury found:

(1) The actual value of the stock of Plaza Building Corporation on February 16, 1966, was $3,040,599.31.

(2) Maxey's interest (46.25 percent) in Maxey Lumber Company stock had a cash market value on February 16, 1966, of $689,541.22.

(3) The cash market value of the assets of Plaza Building Corporation on February 16, 1966, was $5,603,075.

(4) The total liabilities of Plaza Building Corporation on February 16, 1966, were $2,562,475.69.

(5) The sum of $749 paid for the stock of Plaza Building Corporation at the foreclosure sale on February 16, 1966, was a grossly inadequate consideration.

(6) The sum of $231,000 paid for the 46.25 percent interest in Maxey Lumber Company at the foreclosure sale on February 16, 1966, was a grossly inadequate consideration.

(7) The Bank failed to exercise good faith at the foreclosure sale of February 16, 1966, when it sold the Plaza Building Corporation stock.

(8) The failure of the Bank to exercise good faith at the foreclosure sale was a cause in fact contributing to the sale of the stock of Plaza Building Corporation for a grossly inadequate consideration.

on the grounds that the Bank had an independent contractual obligation to exercise good faith in the sale of the foreclosed collateral and owed the plaintiffs duties which were separate and distinct from the duties owed the plaintiffs by the Bank's individual officers and agents. *Maxey v. Citizens National Bank of Lubbock,* 507 S.W.2d 722 (Tex.1974).

(9) The Bank failed to exercise good faith at the foreclosure sale of February 16, 1966, when it sold the 46.25 percent interest in Maxey Lumber Company.

(10) The failure of the Bank to exercise good faith at the foreclosure sale was a cause in fact contributing to the sale of the 46.25 percent interest in Maxey Lumber Company for a grossly inadequate consideration.

After receiving the jury verdict, the trial court found as a matter of law that the liabilities of Plaza Building Corporation on February 16, 1966, were $3,822,834.18, and therefore disregarded the jury answer to Special Issue no. 4 (finding the liabilities of Plaza Building Corporation on February 16, 1966, to be $2,562,475.69.) The effect of disregarding the jury answer was to reduce the verdict for plaintiffs by $1,260,358.49. This was the amount of money the plaintiffs contended was a capital contribution by Maxey to the closely held corporation. By disregarding Special Issue no. 4, the trial judge impliedly found as a matter of law that this sum was not a capital contribution, but rather a loan to the Plaza Building Corporation and therefore a liability of Plaza.

Both parties have appealed from the trial court's judgment. The Bank's 47 points of error challenge the legal and factual sufficiency of the evidence to support the jury answers to the special issues, contend that plaintiff should be barred by res judicata, and further contend that the trial court erred in substituting its finding for the jury answer to Special Issue no. 4. Maxey contends, *inter alia,* that the trial court erred in finding as a matter of law that the money contributed by Maxey to Plaza was a loan rather than a capital contribution, and also that the trial court erred in refusing to award prejudgment interest and exemplary damages to plaintiffs.

■ At the outset, we consider the Bank's contention that the trial court erred in entering judgment for Maxey because prior judgments in favor of the officers, agents and employees of the Bank are res judicata to any suit by Maxey based on

their acts. The Bank argues that any act of bad faith by the corporation would have required an affirmative act by these individuals. We overrule these points on the authority of the express holding of the Texas Supreme Court that the liability of the defendant Bank was not entirely derivative. "The bank as a contracting party to chattel mortgages, pledge agreements and deeds of trust owed the plaintiffs duties which were separate and distinct from the duties owed the plaintiffs by the bank's individual officers, directors, shareholders or employees." *Maxey v. Citizens National Bank of Lubbock,* 507 S.W.2d 722, 725 (Tex.1974).

We next consider the Bank's points of error challenging the jury answers to Special Issues nos. 5 through 10. The jury found that the Bank failed to exercise good faith in the sale of the stock of both Plaza Building Corporation and Maxey Lumber Company, that the consideration paid for the collateral was grossly inadequate, and that the failure to exercise good faith at the foreclosure sale was a cause in fact of the sale of stock for a grossly inadequate consideration. The Bank challenges the legal and factual sufficiency of the evidence to support each answer; and argues that the findings were against the undisputed evidence, or alternatively, against the great weight and preponderance of the evidence.

■ The evidence is undisputed in the instant case that the Bank conducted a private sale without asking for or receiving other bids, without having the property exhibited, and without inviting prospective purchasers. The security agreement authorized private sales without notice and allowed the Bank to purchase the collateral. Nevertheless, the provisions of the agreement do not obviate the requirement that the secured party exercise good faith in selling the collateral:

The pledgee, though having the power by contract to sell the collateral at private sale without notice to the pledgor, cannot escape the duty resting upon him as a trustee to conduct the sale fairly and in good faith, and in such a way as to sub-

serve not only the rights he has, but also the interest of the pledgor.

*King v. Boerne State Bank,* 159 S.W. 433, 437 (Tex.Civ.App.—San Antonio 1913, writ ref'd). When a private sale is made under a mortgage, the sale must in all respects be fairly conducted. *Eichman v. Highland Park State Bank,* 345 S.W.2d 352, 354 (Tex. Civ.App.—Eastland 1961, writ ref'd). A chattel mortgagee who buys the collateral at a private sale has adverse interests—his fiduciary duty is to sell the collateral at the highest possible price, but as a purchaser his interest is to buy the collateral at the lowest possible price. In such cases, it is the duty of the court to examine the sale closely and require the mortgagee to prove by clear and convincing evidence that such sale was fairly and honestly conducted in all respects. *Kolbo v. Blair,* 379 S.W.2d 125, 131 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n. r. e.).

The phrase "grossly inadequate" has been judicially defined as "a consideration so far short of the real value of the property as to shock a correct mind, and thereby raises a presumption that fraud attended the purchase." *Richardson v. Kent,* 47 S.W.2d 420, 425 (Tex.Civ.App.— Dallas 1932, no writ). The determination of whether a consideration is "grossly inadequate" is properly for the jury. After reviewing all of the evidence, we find that there was ample evidence to support the jury answers to special issues concerning grossly inadequate consideration and lack of good faith by the Bank in the sale of the collateral.

The findings that the Bank failed to exercise good faith in the sale of the collateral and that the consideration received was grossly inadequate laid the predicate for the determination of damages, based on the market value of the stock. A prior opinion in this case held:

This corporation was a closely held family corporation. It is uncontradicted there was no evidence of the market value of Plaza stock. No sales of its stock were shown to have been made prior to foreclosure. Book value is entitled to little, if any, weight in determining the value of corporate stock, and many other factors must be taken into consideration to determine the value. *Bendalin v. Delgado,* 406 S.W.2d 897 (Tex.1966). The value of corporate stock is predicated on the market value of the assets of the company after deducting its liabilities. [citations omitted].

*Citizens National Bank of Lubbock v. Maxey,* 461 S.W.2d 138, 141 (Tex.Civ.App.— Amarillo 1970, writ ref'd n. r. e.). That holding is the law of the case, binding in all subsequent stages of the case on the question of stock value. *See, Dessommes v. Dessommes,* 543 S.W.2d 165 (Tex.Civ.App. —Texarkana 1976, writ ref'd n. r. e.). Thus, issues were submitted to the jury requiring determination of the cash market value of Plaza's assets as of the date of foreclosure (Special Issue no. 3) and Plaza's total liabilities at that time (Special Issue no. 4). The value of the stock was calculated by subtracting total liabilities from total assets (Special Issue no. 1).

The Bank challenges the jury answers to each of these three issues, arguing that there is no evidence or insufficient evidence to support the jury findings, that the findings are contrary to the great weight and preponderance of the evidence, and that the trial court erred in entering judgment based upon these findings because they are contrary to the undisputed evidence.

On the question of the value of Plaza's assets and liabilities, plaintiffs offered testimony from Charles Osenbaugh, an independent appraiser who examined all of Maxey's properties, Ed Drumwright, the president of an Arizona holding company that was interested in purchasing Maxey's properties, and Maxey himself. The defendants offered evidence of the value of some of the individual pieces of property, but did not value the properties in the context of the entire feedlot operation.

The Bank challenges the testimony of plaintiffs' expert witness, Charles Osenbaugh, because he did not use comparable sales to value Plaza's properties. Osen-

baugh's credentials as an appraiser were established in evidence and are not challenged on appeal. Once an expert witness has been qualified to testify on value, his testimony is admissible and the weight given the evidence is for the jury's determination. *City of Lubbock v. Tice,* 517 S.W.2d 428 (Tex.Civ.App.—Amarillo 1974, no writ). Despite Osenbaugh's use of a method of valuation which did not rely on comparable sales, this lack of supportive market data would go to the weight and not to the propriety of the evidence. *Texas Electric Service Company v. Wheeler,* 551 S.W.2d 341 (Tex.1977). We conclude that Osenbaugh's testimony, based on his examination of the properties, was competent to support the jury findings.

█ Next, the Bank argues that Maxey was not qualified to give an opinion on the value of the assets. Alternatively, they argue that his testimony is binding on the plaintiffs (the jury found the value of the assets to be approximately $500,000 more than Maxey testified). We reject the Bank's first theory. Maxey knew the value of his land and was qualified to testify concerning the value of his properties. The law is well settled that the owner of real property is competent to testify concerning its value if he knows the market value of his land. *State v. Dehnisch,* 437 S.W.2d 46 (Tex.Civ.App.—Corpus Christi 1968, no writ).

█ We also overrule the Bank's contention that the plaintiffs are bound by Maxey's testimony about property values. If a party testifies to a fact, not as a matter of opinion, but as a considered circumstance of the case, his adversary is entitled to hold him to it as an informal judicial admission. *Griffin v. Superior Insurance Company,* 338 S.W.2d 415, 418 (Tex.1960). In the instant case Maxey's testimony was based upon his opinion of the property values. A party is not bound by facts testified to only by way of opinion. *Petit v. Klinke,* 152 Tex. 142, 254 S.W.2d 769 (1953). Similarly, plaintiffs' charts and exhibits showing the values of Plaza's assets are not judicial admissions. These charts only illustrated and compared the opinions of plaintiffs' witnesses concerning the property values in an easy-to-follow form. *See LeCompte v. Sanders,* 378 S.W.2d 861 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.).

In July 1965 the Bank agreed to postpone foreclosure for at least six months and to furnish Maxey with additional funds during this time. In consideration of this agreement, Maxey authorized Henry Strasburger, a Dallas attorney, to advertise and sell Plaza's properties according to a schedule of minimum values worked out by officers of the Bank and Harold Blank, Maxey's business partner in Maxey Lumber Company. The Bank contends that Maxey should be bound by the values for which he authorized the sale of the properties in July 1965.

█ Generally, a landowner's offer to sell his land for a certain price has been considered an admission of the value of his land. 2 McCormick & Ray, Texas Law of Evidence (2d ed. 1956) § 1524. Nevertheless, this general rule is applicable only if the proposed offer was freely and openly made. The offer is not an admission if made under circumstances of economic duress. *See Gomez Leon v. State,* 426 S.W.2d 562, 565 (Tex.1968); *Bradfield v. State,* 524 S.W.2d 438 (Tex.Civ.App.—Austin 1975, writ ref'd n. r. e.). The record shows that the Strasburger Agreement was not made freely and openly. There is evidence that Maxey was under pressure from the Bank to enter into the Strasburger Agreement or face immediate foreclosure on the chattel mortgages.

█ The Bank further argues that Maxey's testimony is incompetent because he arbitrarily increased the book values of the assets inconsistent with their acquisition costs. Evidence of the purchase price is competent as evidence of value at a later date if the sale was voluntary and not remote in time. *City of Dallas v. Fridge,* 410 S.W.2d 40 (Tex.Civ.App.—Austin 1966, no writ). An examination of acquisition costs in the instant case is complicated by Maxey's use of tax free exchanges in trading his urban assets for ranches. The defendant

Bank offered Maxey's tax basis in certain urban assets as evidence of their value. The correlation between the depreciated book value of an urban asset traded for a ranch, and the value of that ranch several years later is tenuous at best. *See United States v. Leavell & Ponder, Inc.*, 286 F.2d 398 (5th Cir. 1961) *cert. denied*, 366 U.S. 944, 81 S.Ct. 1674, 6 L.Ed.2d 855.

■ Extensive testimony was offered concerning the value of Plaza's assets. The answer to Special Issue no. 3 was well within the range of values presented in evidence. The jury had the right to weigh the evidence and set the total value at any amount between the highest and lowest values expressed by witnesses. *Centerville Independent School District of Leon County v. Wingfield*, 450 S.W.2d 946, 948 (Tex.Civ. App.—Waco 1970, no writ); *Gossett v. State*, 417 S.W.2d 730 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.).

After reviewing all of the evidence, we conclude that the jury answer to Special Issue no. 3, that the value of Plaza's assets was $5,603,075, is supported by the evidence and is not so against the great weight and preponderance of the evidence so as to be manifestly unjust. Plaintiffs' points of error challenging Special Issue no. 3 are overruled.

■ We next consider Plaza's liabilities (Special Issue no. 4). The Bank challenges the legal and factual sufficiency of the evidence to support the jury finding that Plaza's liabilities were $2,562,475 and contends that the finding is contrary to the undisputed evidence and against the great weight and preponderance of the evidence.

Liabilities of Plaza totaling $2,562,475 were undisputed. Certain other liabilities of Plaza were disputed. During a discussion concerning the submission of the special issues, counsel for Maxey stated that he would be willing to stipulate to the debts of Plaza Building Corporation except for the value of the Plainsman Hotel lease and the notes from Plaza to Maxey.

Under the terms of the Plainsman Hotel lease, Plaza was obligated to pay $6,000 per month rent for twenty years and was liable for all wear on the premises during the lease term. While there was evidence that the Plainsman Hotel lease was a liability, the extent of the liability was not established as a matter of law.

Plaza's notes to Maxey were for $1,260,-358.49 advanced to Plaza Building Corporation. Maxey contends that the jury believed that the advances were actually capital contributions, and therefore not liabilities of Plaza. The advances were documented by promissory notes payable to Maxey and a purchaser of Plaza stock would consider Maxey's claim against the corporation in valuing the stock. We have reviewed all of the evidence, including that favorable to the jury answer, and conclude that the overwhelming weight of the evidence is that Maxey's advances to Plaza Building Corporation were loans rather than capital contributions. It necessarily follows that the jury finding that Plaza's liabilities were $2,562,475 is against the overwhelming weight of the evidence.

After receiving the verdict the Bank filed a motion for mistrial based on the jury answer to Special Issue no. 4. The trial court attempted to correct the jury verdict by disregarding the finding on the liabilities of Plaza and finding as a matter of law that the liabilities of Plaza total $3,822,834.18 (by adding $1,260,358.49, representing Plaza's notes to Maxey). This action of the trial court is challenged by both parties.

Maxey contends that the jury answer was supported by the evidence and is a proper basis for judgment. We overrule that contention because we have found that the answer was against the overwhelming weight and preponderance of the evidence.

The Bank contends that the trial court erred in substituting its finding for the jury finding because the amount of total liability was not established as a matter of law. We sustain this contention. As discussed earlier in this opinion, certain alleged liabilities were disputed, thus the total liabilities were not established as a matter of law. In such cases, the trial judge may not substitute his own finding for that of the jury. His only

recourse if he sets aside the finding or verdict is to grant a new trial. *Garcia v. Garcia,* 94 S.W.2d 864 (Tex.Civ.App.—San Antonio 1936, no writ). We conclude that the trial court erred in overruling the Bank's motion for mistrial.

We next consider plaintiffs' alternative contention that even if the notes payable to Maxey were loans rather than capital contributions, the Bank, as successor corporation to Plaza Building Corporation, must pay the note owed to Maxey. We find no pleadings to support this argument. In their Sixth Original Petition, plaintiffs alleged "in addition, the Bank precluded Plaza Corporation from repaying Maxey." Plaintiffs did not allege that the Bank was Plaza's successor corporation. Maxey did not request issues about the liability of the Bank for the debt of Plaza to Maxey. An appellant is limited to the theories upon which the case was tried and may not urge new theories for the first time upon appeal. *Brown-McKee, Inc. v. Western Beef, Inc.,* 538 S.W.2d 840 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.).

We next consider Maxey's other closely held corporation, Maxey Lumber Company. The assets of Maxey Lumber included the business of the Lumber Company itself, the property on which the Lumber Company was situated, and a ranch in Missouri. Homer Maxey owned 75 percent of the stock (37,500 shares) of Maxey Lumber Company. Citizens National Bank had a first lien upon 23,125 shares of Lumber Company stock, which represented 46.25 percent of the outstanding shares of stock. Harold Blank, Maxey's partner in the Lumber Company, had a first lien on Maxey's remaining 14,375 shares (28.75 percent), and the Bank had a second lien on these shares. At the foreclosure sale on February 16, 1966, the Bank purchased the 23,125 shares, its first lien interest, for $231,000.

In Special Issue no. 2, the jury found that the value of the 23,125 shares of Maxey Lumber Company on the date of foreclosure was $689,541.22. The Bank raises the same challenges to this finding that it made with regard to the finding about the value of Plaza's assets. We reject their argument here for the same reasons discussed earlier in this opinion. Osenbaugh's appraisal of Maxey Lumber using the capitalization of income approach was competent evidence for the jury to consider. *Southwestern Bell Telephone Company v. Ramsey,* 542 S.W.2d 466 (Tex.Civ.App.—Tyler 1976, writ ref'd n. r. e.). The Bank's points of error challenging the answer to Special Issue no. 2 are overruled.

Plaintiffs' points of error 5 through 12 contend that the trial court erred in failing to include various items in the total recovery. We will address these issues separately.

The Bank held a second lien on Maxey's 28.75 percent interest in the Lumber Company stock. (Harold Blank held the first lien on this interest.) After foreclosure, the Bank and Harold Blank agreed to reorganize the stock structure of Maxey Lumber. They agreed to value the 28.75 percent interest at $13.00 per share and divided the stock between them. The Bank received 3,519 shares, which they applied to Maxey's indebtedness at the rate of $13.00 per share; the remaining shares were applied to the first lien debt owed to Blank. On appeal, plaintiffs contend that they should be credited at the rate of $29.82 per share, the value the jury placed on the 46.25 percent interest in the Lumber Company. We overrule this argument for the reason that Defendants' Exhibit no. 56 shows Maxey's consent to the reorganization and valuation of the stock. Maxey signed the memorandum sent to him by Harold Blank asking for his consent to the proposed reorganization and is contractually bound by the terms of the agreement. Maxey received consideration for his promise to accept reorganization, *i. e.,* a credit against his debts to Blank and the Bank.

Plaintiffs contend that the trial court erred in refusing to submit Requested Special Issue no. 5, concerning the market value of Maxey's personal property—horses, cattle, feed and equipment located on the Plaza Building Corporation ranches and

feedlot. The cattle were sold at a private sale and the feedlot equipment was sold at auction. Plaintiffs' Requested Special Issue no. 5 asked the jury to find "the fair market value of the cattle, horses, feed, equipment, and other personal property belonging to Homer G. Maxey personally on February 16, 1966, over which the Bank exercised dominion and control and subsequently or otherwise disposed of." The trial court correctly rejected this special issue, because there were no requested issues concerning lack of good faith in disposing of these assets. Issues inquiring whether the Bank acted in good faith and whether a lack of good faith caused the sale of the collateral for inadequate consideration were necessary to lay the predicate for recovery of damages. Plaintiffs submitted such issues concerning the sale of the stock in the two closely held corporations, but failed to do so on the question of Maxey's personal property. In the absence of these issues, the trial court correctly denied Plaintiffs' Requested Special Issue no. 5.

█ Plaintiffs further claim that they did not receive value for a trailer house and office equipment which were allegedly "taken" by the Bank after foreclosure. There is no evidence in the record that the Bank sold or otherwise disposed of either the trailer house or office equipment. Nor is there any evidence that either the trailer house or office equipment were listed on any collateral security agreement. In the absence of any evidence concerning these chattels, we hold that the trial court correctly refused to award the value of these assets to plaintiffs.

█ Several of Maxey's insurance policies had been assigned to the Bank pursuant to collateral security agreements. Plaintiffs contend that they never received credit for the cash value of the policies after foreclosure. There is no evidence that the Bank ever withdrew the cash value of the policies. Apparently, the cash value was used to keep the policies in force for as long as possible. As assignee of the policies, the Bank was not obligated to pay the premiums and was entitled to allow the insurer to use the cash value to keep the policies in force. Appleman on Insurance (1943), § 1315, p. 536; *Mondon v. Patterson National Bank*, 127 N.J.L. 560, 23 A.2d 593 (N.J.Ct.App.1942).

█ In three points of error, plaintiffs argue that the trial court erred by including certain debts of Plaza as liabilities because the Bank never paid these debts. This contention has no bearing on the central issue in this case—the value of Plaza stock, determined by subtracting the total liabilities from the total assets on the date of foreclosure. Furthermore, plaintiffs did not request a jury issue concerning these debts. In the absence of a requested issue, plaintiffs have not preserved error and these points of error are overruled. Tex.R.Civ.P. 273, 276; *Meehan v. Pickett*, 463 S.W.2d 481 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.).

Plaintiffs challenge the refusal of the trial court to submit to the jury the question of malice and exemplary damages. They contend that the Bank may be held liable for exemplary damages even though its officers and employees have been judicially exonerated from liability. Plaintiffs rely on the holding of the Supreme Court in *Maxey v. Citizens National Bank of Lubbock*, 507 S.W.2d 722 (Tex.1974) that the Bank had assumed a contractual obligation to exercise good faith and fairness in the sale of the foreclosed chattel which was distinct and separate from the duties of the Bank's individual officers and employees to plaintiffs.

█ Exemplary damages are awarded to a party who has been injured as a result of wanton or malicious action. *Ware v. Paxton*, 359 S.W.2d 897 (Tex.1962). The general rule is well established that a corporation can be liable for exemplary damages only when its agents have acted with malice:

"The entity of a corporation is a mere concept resting solely in legal fiction. A corporation is an artificial being, without mind, soul, heart or life; it may not conceive a purpose, form, or execute a plan,

or do an act except through the agency of men or women. Whatever those men and women, acting singly or in confederation, may do in its name or behalf, at least within the general scope of employment, represents it in action in the achievement of the charter purpose." *Chronister Lumber Company v. Williams,* Tex. Comm'n App., 116 Tex. 207, 288 S.W. 402, 403.

The corporation, independent of its officers, the president and vice president in this case, could entertain no malice or perform any willful act, and, as the jury found that such officers did not act willfully, maliciously, and without probable cause, this assignment is sustained.

*Security State Bank v. Spinnler,* 55 S.W.2d 128 (Tex.Civ.App.—Amarillo 1932, writ dism'd).

The vitality of the *Spinnler* holding was affirmed in *Mayflower Investment Company v. Stephens,* 345 S.W.2d 786, 793 (Tex. Civ.App.—Dallas 1960, writ ref'd n. r. e.):

Of course, a corporation may become liable for exemplary damages, but this can arise only by imputation to it of the malice of some individual because the corporation is incapable of feeling and cannot be said to have acted with malice except by imputing to it the malice of some natural person related to it as agent acting for the corporation.

■ The individual agents and officers of the Bank were granted instructed verdicts in the first trial of this case. Plaintiffs did not appeal from the instructed verdicts in favor of the individual defendants. Therefore, under the authority of *Spinnler* and *Stephens,* the Bank cannot be liable for exemplary damages. We conclude that the trial court properly refused to submit to the jury the question of exemplary damages.

In view of our holding that exemplary damages will not lie in this case, we overrule plaintiffs' points of error contending that the trial court erred in overruling plaintiffs' post-trial motion to sever and order a separate new trial solely on the issue of exemplary damages.

■ Plaintiffs challenge the refusal of the trial court to award prejudgment interest on the amount of actual damages determined by the jury. Interest, as damages, may be allowed upon unliquidated demands arising either out of breach of contract or tort. When "the measure of recovery is fixed by the conditions existing at the time that the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done to him." *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11, 12 (1897). The underlying rationale of that case is that a party is entitled to be compensated for the detention of his money or property. This equitable principle was recently reaffirmed in *Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480 (Tex.1978).

■ The relevant consideration in permitting the award of prejudgment interest is whether the measure of recovery (not necessarily the amount) is fixed by conditions existing at the time the claim arose. *Davidson v. Clearman,* 391 S.W.2d 48 (Tex. 1965); *Metal Structures Corporation v. Plains Textiles, Inc.,* 470 S.W.2d 93 (Tex. Civ.App.—Amarillo 1971, writ ref'd n. r. e.); *City of Ingleside v. Stewart,* 554 S.W.2d 939 (Tex.Civ.App.—Corpus Christi 1977, no writ). If damages are ascertainable by known standards of value and accepted rules of evidence, prejudgment interest is allowable. *Tennell v. Esteve Cotton Company,* 546 S.W.2d 346 (Tex.Civ.App.—Amarillo 1976, writ ref'd n. r. e.); *Ambox, Inc. v. Stewart & Stevenson Services, Inc.,* 518 S.W.2d 428 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.). Prejudgment interest is allowable when the precise dollar amount of damages is not ascertained short of jury verdict. *Cage Brothers v. Cage,* 382 S.W.2d 169 (Tex.Civ.App.—San Antonio 1964, writ ref'd n. r. e.) (fair rental value of equipment); *Melody Home Manufacturing Company v. Morrison,* 502 S.W.2d 196 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n. r. e.) (damages based on the difference between the value of a new

mobile home had it been fit for its intended purpose, and the actual market value of the mobile home as received in defective condition).

 In the instant case the measure of recovery—the value of the assets minus the total liabilities—was fixed for purposes of determining actual damages as of the date of the injury, February 16, 1966. Additionally, the underlying rationale for awarding prejudgment interest is applicable to the facts at bar. We hold that the trial court erred in refusing to award prejudgment interest on the amount of actual damages determined by the jury.

Having determined that this is a proper case for the award of prejudgment interest, we consider whether interest should be awarded at the rate of six percent or ten percent. Courts have awarded ten percent prejudgment interest, the highest rate allowed by law, only in cases involving the breach of a fiduciary obligation. *Van Orden v. Pitts*, 206 S.W. 830 (Tex.Comm'n App.1918, holding approved); *Anderson v. Armstrong*, 132 Tex. 122, 120 S.W.2d 444 (Tex.Comm'n App.1938, opinion adopted). These cases are distinguishable from the instant situation, wherein the Bank had a contractual obligation to exercise good faith. We do not find authority for awarding ten percent interest for breach of such a contractual obligation. We therefore hold that plaintiffs are entitled to recover six percent prejudgment interest on any recovery of actual damages.

In summary we hold that the jury finding that the liabilities of Plaza were $2,562,-475.69 is against the great weight and preponderance of the evidence and that the trial court erred in substituting its own finding for the jury answer. The trial court properly refused to submit the question of exemplary damages, but erred in denying plaintiffs recovery of prejudgment interest.

The foregoing holdings are dispositive of the appeal. We therefore do not reach the remaining points of error.

The judgment of the trial court is reversed and the cause remanded for a new trial.

DODSON, J., not participating.