Andrew SANCHEZ, Jr., Appellant,

v.

James O. MATTHEWS, Appellee.

No. 16726.

Court of Appeals of Texas,
San Antonio.

April 21, 1982.

Rehearing Denied Aug. 4, 1982.

Richard Sommer, P. Otis Hibler, San Antonio, for appellant.

Leonard J. Gittinger, Jr., James M. Parker, San Antonio, for appellee.

Before CADENA, C. J., and BUTTS and CLARK, JJ.

## OPINION

BUTTS, Justice.

This is an appeal from a judgment rendered by the district court which decreed a constructive trust in favor of appellee, James O. Matthews based upon a breach of a fiduciary duty arising in a joint venture. We affirm the judgment as reformed.

The bench trial disclosed that appellee Matthews, in 1970, and appellant Sanchez, jointly acquired 538 acres, more or less, of undeveloped land in Bexar County, bounded by St. Hedwig Road and Highway 90 East, for immediate resale. The parties bought the property under a six-month earnest money contract, which both parties signed. Unable to sell the land in that time, and to prevent loss of both the land and the invested money, appellant provided an additional

seventeen thousand dollars ($17,000.00) and other security to purchase the land. At that point the real estate agent James Eaton, who initially handled the sale of the property, agreed to join the two others in the venture. Eaton, not a party to this suit, appellee, and appellant Sanchez executed a written "Joint Venture Agreement" to take effect on August 20, 1970. Provisions pertinent to this appeal are:

## X. TERMINATION

This Joint Venture shall terminate upon the sale of the hereinbefore described property [the 538-acre tract] and distribution of profits or payment of losses, as the case may be.

## XI. ALTERNATE OPTION FOR SALE OF PROPERTY

In the event and only in the event that on July 1, 1971, the Joint Venture has not sold the property . . ., or has not entered into an Earnest Money Contract executed by a Buyer for the purchase of same, by which this Joint Venture would realize a profit, then and in such event, the aforedescribed property belonging to this Joint Venture shall be placed on the market for a price to include the initial cost of said property, plus any and all expenses incurred for the purchase, repair, mortgaging and resale of said property, exclusive of time rendered by each Joint Venturer . . . .

Appellee and Eaton each held a twenty-five percent interest, while Sanchez held a fifty percent interest. The legal title to the property was deeded to Sanchez. Although the joint venture agreement specified that all parties would exert their efforts to find a buyer for the land, the agreement was that Sanchez would actively manage the property.

The evidence at trial disclosed that the land remained unsold on July 1, 1971. At a meeting on July 12, 1971, the joint venturers agreed to sell the land simply to recover their initial costs and expenses. The evidence showed that Sanchez secured a fifteen-day earnest money contract from Dr.

Arthur Berger on July 19, 1971. The price of the property was five hundred twenty-four thousand seven hundred eighty dollars ($524,780.00). On July 19, 1971, Sanchez further borrowed against the property the sum of fifteen thousand dollars ($15,000.00) from Dr. Berger, executing a promissory note secured by a deed of trust on the property to the doctor. Appellee and Eaton each received three thousand seven hundred fifty dollars ($3,750.00) as net profit. Appellee and Eaton executed releases on August 13, 1971. Thereafter, appellee received two thousand five hundred five dollars ($2,505.00) as final payment from the joint venture. Evidence showed that on August 2, 1971, Sanchez agreed with Berger and Dean L. Toland to repurchase his same fifty percent interest in the property. It was August 9, 1971, when the total property was conveyed by deed to Berger. On August 10, 1971, Berger conveyed by deed to Sanchez an undivided fifty percent interest in the land, and, further, to Toland an undivided twenty-five percent interest. Sanchez's deed was not recorded until February 22, 1972.

On October 9, 1973, Sanchez conveyed by deed to B. J. McCombs an undivided twenty-five percent interest in the same property. These four then joined to convey fee title to a trustee, Philip Benson. Prior to this time appellee had caused to be filed in the deeds records certain instruments to cloud title to the property. In November, 1973, the property was sold for well over the sum of one million dollars ($1,000,-000.00). All of appellant's profits from the sale were finalized and realized by July 2, 1974. His testimony showed that he could utilize all of the monies he derived from the property for investment purposes after that date.

The trial court entered its findings of fact and conclusions of law after imposing a constructive trust on Sanchez's proceeds from the sale. Sanchez had also retained an undivided fifty percent interest in a 20-acre tract of land in the original property.

FINDINGS OF FACT (Summarized)

1. That appellee and Sanchez were joint venturers as to the described real property.

2. That Sanchez owed a fiduciary duty to appellee to disclose to him the entire agreement between Sanchez and Berger at the time Sanchez agreed to retain an interest in that property.

3. That Sanchez owed a fiduciary duty to appellee to disclose the full agreement with Berger at the time Sanchez received a deed from Berger to an undivided fifty percent interest in the property.

4. That Sanchez did not advise appellee that he was retaining that interest in the joint venture property.

5. That Sanchez concealed from appellee the information that he had received back from Berger that interest in the property.

6. That as a result of the failure to disclose and concealment, appellee did not and could not know the true facts when he agreed in writing to the sale to Berger and executed a release of his interest in the property and a release of Sanchez.

7. That there was no consideration for the agreement or release.

8. That by reason of the actions of Sanchez a constructive trust arose in favor of appellee as to the joint venture property and any profits made by Sanchez from such property.

9. That Sanchez made a net profit of at least one hundred fifty-three thousand seven hundred twenty-eight dollars ($153,728.00) from the Joint Venture property, resulting from his continued ownership of a fifty percent interest.

10. That Sanchez is indebted to appellee for one-fourth of that realized net profit.

CONCLUSIONS OF LAW (Summarized)

1. That Sanchez owed a fiduciary duty to his joint venturer, appellee, to disclose fully all terms and conditions of the sale of the joint venture property and his continued ownership interest therein.

2. That Sanchez breached his fiduciary duty to appellee.

3. That the purported release dated August 13, 1971 and the letter agreement of the sale to Berger, both executed by appellee, are invalid and ineffective.

4. That by reason of the actions of Sanchez a constructive trust arose in favor of appellee as to the joint venture property and any profits made by Sanchez from such property.

5. That Sanchez made a profit of not less than one hundred fifty-three thousand seven hundred twenty-eight dollars ($153,728.00) from the sale of the joint venture property.

6. Appellee is entitled to judgment against Sanchez for one-fourth of the net profit made by Sanchez after completion of the sale of the property. He is entitled to judgment against Sanchez for the sum of thirty-eight thousand four hundred thirty-two dollars ($38,432.00), together with interest thereon from date of judgment at the legal rate and all costs of court.

The judgment recited that appellee would take nothing against Berger, Benson, and McCombs. Further it decreed that appellee would not recover any interest in the real property the subject of this suit.

Constructive trusts are often imposed in cases where a person in a fiduciary relationship to another acquires something in violation of his duty as a fiduciary. The persons in a joint venture have a fiduciary relationship in many instances. 5 Scott, the Law of Trusts, § 495 (3rd Ed. 1967). A constructive trust will be imposed on a fiduciary where a person in a fiduciary relationship to another acquires property, and the acquisition or retention of the property is in violation of his duty as a fiduciary. Restatement of Restitution, § 160 (1937). And where a fiduciary in violation of his duty to the beneficiary acquires the property through the use of confidential information, he holds the property as acquired upon a constructive trust for the beneficiary. *Id.* at § 200.

Sanchez brings forward two related points of error, which the court will address before taking up his last point of error.

These are: That the joint venture had ended, the purpose had failed before his repurchase of the land, and the joint venture land had been sold to Berger before the repurchase. Further, he maintains that the equitable remedy of constructive trust should not have been imposed by the trial court. We do not agree with these contentions.

Joint venturers are defined as "[p]ersons combined in a common enterprise so as to share profits and losses, but ... not technically partners. They have present or prospective interests in the same property." Bogert, the Law of Trusts and Trustees, § 488 (Rev.2d Ed. 1978). The plaintiffs in *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960) sued to recover an undivided interest in a one-sixteenth overriding royalty interest acquired by their joint venture. They argued that the royalty derived from lands in an area which they had tried to develop under a joint venture. The Supreme Court agreed and held the joint venture was still in existence and upheld the imposition of the constructive trust.

It was *Consolidated Gas and Equipment Co. v. Thompson*, 405 S.W.2d 333, 336 (Tex. 1966) which proclaimed: "[F]or a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit...." We note there was no written agreement in that case, however, as here. Further, there was clearly a fiduciary relationship in the instant case.

In *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex.1977) the court refused to impose a constructive trust when the parties had a written agreement for one oil and gas lease and the defendant meanwhile had obtained another lease in his own name. After the second lease began producing, plaintiffs sued, alleging they believed they should have the same arrangement as with the first lease. Finding there was indeed a prior fiduciary relationship between the parties, the court limited its extent by holding:

> ... [T]he fiduciary duties extended only to the *dealings within the scope of the underlying relationship of the parties' joint venture* for the development of a particular oil and gas lease ... Had the alleged impropriety been within the scope of these activities, as by one party's appropriating the operating expenses account to purchase land in his own name, a breach of the fiduciary relationship would have occurred and the resulting or constructive trust remedy would be imposed. Such was not the case here. (Emphasis added).

It is clear that recent decisions of the Supreme Court have limited the scope of a joint venture for the purpose of imposing a constructive trust. *See Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976) wherein the court ruled that a foreign oil venture was *part of the underlying relationship of the original agreement*, i.e., not limited in scope.

■ Evidence at trial revealed that Sanchez and Toland, who received an interest in the property from Berger at the same time as Sanchez, had met and discussed the land on different occasions before the sale to Berger. We agree with the trial court in its findings of fact and conclusions of law based upon our study of the evidence, which showed the sometimes overlapping times of the transactions involving the land.

We find that the joint venture's underlying fiduciary relationship did not end with the sale of the property to Berger, but rather, that under such state of facts the scope of that fiduciary relationship continued. Accordingly, we hold the imposition of the constructive trust was proper when, as here, Sanchez obtained an interest in a new deal which was embraced by the original joint venture agreement.

■ By his last point of error appellant Sanchez contends the releases given by appellee should have been found valid and binding by the trial court. He argues that appellee by pleading no special denial of the affirmative defense of release failed to join issue; therefore this affirmative defense stands unrefuted.

Tex.R.Civ.P. 82 (Vernon 1979) provides that the plaintiff need not deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless otherwise expressly admitted. *Cf.* McDonald, Texas Civil Practice, § 802 (1970) and cases cited therein. Appellant did not raise this objection at the trial. He had the burden of proof, that is, to show the validity of the releases, which had been put in issue by his pleading. By failing to object specifically to the alleged defect before rendition of judgment, he waived the defect, if any. Tex.R.Civ.P. 90 (Vernon 1979). The point of error is not well taken.

■ By way of cross point appellee argues that he has been wrongfully denied an interest in land out of the joint venture property in which Sanchez retained an interest. We do not agree. The judgment denied appellee any interest in the joint venture property but did not refer specifically to the twenty acres originally retained from that acreage by Sanchez, Berger, Toland, and McCombs. Sanchez deeded an undivided one-fourth interest in the twenty acres to a third party, the proceeds of that sale being part of the profits determined by the trial court. The evidence disclosed that Sanchez apparently retained an undivided one-fourth interest; however, that land was transferred without his joinder or knowledge to St. Hedwig Ltd., a real estate development company. There was no evidence that Sanchez had profited from this transaction. Sanchez expressed his surprise at the discovery during trial. Appellee did not plead nor argue the matter at trial. Although Sanchez may in the future be able to assert some claim to this property, at the time of trial title had been removed by deed from him.

The status quo of joint venturers is that of equal sharing. *Omohundro, supra,* 341 S.W.2d at 410. Under the unique facts and circumstances of this case, we hold that by the imposition of the constructive trust the trial court correctly adjudged the joint venturer's, appellee's, right to share in the profits derived from the joint venture property. Appellee's third cross point of error is without merit.

In his first two cross points appellee contends he should have been awarded prejudgment interest. He first argues that the trial court erred by not allowing him to file a trial amendment seeking prejudgment interest. Appellee's prayer was a general one. Just before the case was submitted to the court for determination, and after testimony ended, appellee presented his motion for leave to file the trial amendment. The trial amendment contained no new substantive matter. *See* Tex.R.Civ.P. 63, 66 (Vernon 1979). The court denied the motion.

■ It is without question that lack of diligence was demonstrated since the original petition was filed in 1974, and the trial conducted in 1980. We do not condone appellee's inaction. A trial court does not err in denying permission to file a trial amendment when the record shows a lack of diligence. *Schrader v. Artco Bell Corp.,* 579 S.W.2d 534 (Tex.Civ.App.—Tyler 1979, writ ref'd n.r.e.). This ruling will not be disturbed on appeal unless the complaining party shows a clear abuse of discretion. *Hardin v. Hardin,* 597 S.W.2d 347 (Tex. 1980).

Appellee's pleadings called for an accounting. The evidence resulting from the accounting enabled the trial court to ascertain that appellee's recovery should be one-fourth of Sanchez's profits from the joint venture property, which was the sum of thirty eight thousand four hundred thirty-two dollars ($38,432.00). In addition the evidence reflected the exact time when those profits became solely Sanchez's for purposes of reinvestment and use. That time was July 2, 1974.

■ Under the present liberal rules of pleading, Tex.R.Civ.P. 67 and 90 (Vernon 1979), a prayer for general relief will permit the court to order prejudgment interest. *Cage Bros. v. McCormick,* 344 S.W.2d 203, 207 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Prejudgment interest may be recovered when the damages are established at a definite time and the amount of the damages is definitely determinable. If

the damages are ascertainable by known standards of value and accepted rules of evidence, prejudgment interest is allowable. *Maxey v. Texas Commerce Bank of Lubbock*, 571 S.W.2d 39, 50 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.). Prejudgment interest is allowable when the precise dollar amount of damages is not ascertained until the verdict. *Maxey, supra*, at 50, citing *Cage Bros. v. Cage*, 382 S.W.2d 169 (Tex.Civ.App.—San Antonio 1964, writ ref'd n.r.e.).

 Notwithstanding the trial court's refusal to permit the trial amendment, the appellee now seeks prejudgment interest, asserting that his general prayer in the suit authorizes that recovery. Interest, as damages, not *eo nomine*, may be allowed upon unliquidated demands arising either out of breach of contract or tort. *Maxey, supra*, at 50, citing *Watkins v. Junker*, 90 Tex. 584, 40 S.W. 11, 12 (1897), which states:

> When the measure of recovery is fixed by the conditions existing at the time the injury is inflicted, the person entitled to recover has also the right to have compensation for the detention of the money to which he is entitled by reason of the wrong done him.

The *Maxey* court noted that the underlying rationale of that case is that a party is entitled to be compensated for the detention of his money or property.

We have examined the record and note in the final argument regarding prejudgment interest the following colloquy:

> Appellee's Counsel: Well, Your Honor, I don't know how he can be prejudiced by me asking for something that the evidence came—shows....
>
> The Court: Is it your position that if your pleadings supported it, you would be entitled to it, as a matter of law ... and not at the discretion of the court?
>
> Appellee's Counsel: Oh, no. I think the Court could decline to award the prejudgment interest, if the Court felt it was unjust to do so. I feel I have a right to seek it under the rules the [Supreme] Court has laid down. The amount received is definite and re-

ceived as of a certain date ... I just ask leave of the Court to seek it.

> The Court: Well, I'll consider it after I have seen your trial amendment in writing.

Appellee's written trial amendment specially prayed that he be awarded prejudgment interest. The trial court's ruling noted on the instrument is "Leave to file denied." The final judgment recites that "leave to file same was denied by the Court, to which action of the Court the Plaintiff then and there excepted."

We find that the trial court abused its discretion when it failed to permit appellee to file his trial amendment specially pleading for prejudgment interest. Notwithstanding that finding, this court will proceed to render the judgment as it should have been rendered below. We conclude that an award of prejudgment interest to appellee is proper when grounded upon the general prayer taking into consideration the state of the unique facts of this case. Accordingly, the judgment is reformed to award appellee prejudgment interest at the legal rate from July 2, 1974, to the date of judgment. Tex.R.Civ.P. 434 (Vernon 1979).

The judgment is affirmed as reformed.