**MONSANTO COMPANY, Appellant,**

v.

**Annie Belle JOHNSON, Appellee.**

**No. 01–83–0765–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

July 19, 1984.

Otto D. Hewitt, III, McLeod, Alexander, Powell & Apffel, Ervin A. Apffel, McLeod, Alexander, Powell & Apffel, Galveston, for appellant.

Alton Todd, Brown, Todd, Hagood & Davenport, Alvin, Mark D. Wilson, Atkins & Wilson, Kenneth W. Sparks, Edward J. Hennessy & Associates, Houston, for appellee.

Before EVANS, C.J., and BULLOCK and COHEN, JJ.

## OPINION

EVANS, Chief Justice.

The appellee, Annie Belle Johnson, brought this action against Monsanto Company and Jesse L. Hutto, Jr. to recover for the wrongful death of her husband, B.B. Johnson. At the time of his death Mr. Johnson was working as an insulator for Owens-Corning Fiberglass Corporation at Monsanto's Texas City plant. Johnson had just walked through Monsanto's entrance gate when a car, driven by Hutto, crashed through the gate and struck him, causing his fatal injuries.

In her petition, Mrs. Johnson alleged, among other acts and omissions, that Monsanto was negligent in locating the entrance gate at the end of a public thoroughfare, and she claimed damages for pain, suffering and mental anguish, loss of consortium, support, and for medical and funeral expenses. She also asked for punitive damages and for prejudgment and postjudgment interest.

The case was tried to a jury which, in response to special issues, found no negligence on the part of the driver, Hutto, but negligence on the part of Monsanto in failing to offset its entrance gate from the end of the public thoroughfare. In response to the damage issues the jury awarded Mrs. Johnson $210,000 for her pecuniary loss; $500,000 for loss of consortium; $463.55 for medical and health care; and $2,444.45 for funeral and burial expenses. It also found that Monsanto was grossly negligent and awarded Mrs. Johnson the sum of $250,000 as exemplary damages.

The trial court set aside the jury's gross negligence award of $250,000, finding no evidence to support such award. After hearing Monsanto's motion for judgment *non obstante veredicto*, the court also ordered a remittitur of the prejudgment interest it had awarded as of the date of the verdict, and a remittitur of the medical and funeral expenses, reducing the total damage recovery from $712,908 to $710,000.

On this appeal, Monsanto challenges the sufficiency of the evidence to support the jury's finding of negligence, claims that the jury's awards for pecuniary loss and for loss of consortium were excessive, and alleges that the trial court erred in excluding certain expert testimony. In cross-points of error, Mrs. Johnson contends that the trial court erred in holding there was no evidence of gross negligence, and in requiring her remittitur of the expenses and prejudgment interest.

Monsanto contends in its first two points of error that the trial court erred in *submitting* the negligence issue and in *rendering judgment* on that issue, arguing that there is no evidence or, alternatively, insufficient evidence to support the jury's answer.

Because the trial court must render judgment on an issue unless there is no evidence to support it, these two points of error are both "no evidence" questions. *Chemical Cleaning, Inc. v. Chemical*

*Cleaning & Equip. Serv., Inc.*, 462 S.W.2d 276 (Tex.1970). In reviewing these points, we consider only that evidence, and reasonable inferences therefrom, which viewed in its most favorable light, supports the jury's findings, rejecting all evidence and inferences to the contrary. *Schaefer v. Texas Employers' Ins. Ass'n*, 612 S.W.2d 199 (Tex.1980).

■ It is undisputed that the decedent, Mr. Johnson, occupied the status of an invitee on Monsanto's premises, and under the circumstances here present, Monsanto had the duty to take such reasonable precautions as would protect Mr. Johnson from any dangerous condition on its property of which it had either actual or constructive knowledge. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292 (Tex.1983); *see also Shell Oil Co. v. Waxler*, 652 S.W.2d 454 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.).

■ The entrance gate in question was located at the end of a regularly traveled public street. All employees of contractors working on projects at the Monsanto plant were required to enter and exit at this gate, where their hours were recorded and security checks were made. The gate was kept open from 7:00 A.M. until 5:00 P.M. for both pedestrian and vehicular traffic. There were guards posted at the gate but their duties were primarily related to plant security. A stop sign was posted at the gate and also a sign indicating the speed limit inside the plant to be 15 m.p.h. On the day in question, Mr. Hutto was approaching the gate in his car when he apparently lost conscious control, allowing the car to proceed past the stop sign, through the gate, and into the plant property at about 40 m.p.h. The car continued unimpeded until it struck Mr. Johnson at a point approximately 200 feet inside the gate.

Monsanto's director of security testified that the gate had been installed 10 years prior to the accident at its current location, *i.e.*, in a direct line with an east-west thoroughfare which ran into the plant. Pedestrian traffic through the gate at the time of the accident used the same road as vehicles, and there was no sidewalk, fence, or other separation of pedestrians from vehicular traffic.

A traffic engineer, Mr. Dan Lynch, was called as an expert witness by Mrs. Johnson. He testified that he had been employed by the City of Houston as a traffic engineer for seven and a half years, and also had worked for a private firm performing traffic transportation engineering. He had performed consulting work for the entrance to the Port Arthur Texaco plant and had also done work for Monsanto. He stated his opinion, as an expert, that the accident could have been avoided by relocating the entrance to the plant at an offset location from the thoroughfare road. Thus, the jury was entitled to infer from this testimony that the location of the gate in relation to the public thoroughfare presented a dangerous condition to pedestrians using the gate to enter Monsanto's plant site and that such danger could have been alleviated by relocating the gate entrance at a location offset from the road.

In its brief, Monsanto argues that such an offset would have made little difference, pointing to testimony that a car might still break through a chain link fence even if the gate were offset. This argument does not take into account the real purpose of such an offset, *i.e.*, to move pedestrians using the gate away from the direct line of oncoming traffic.

We find that the evidence furnished a reasonable basis for the jury's determination of the negligence issue and overrule Monsanto's first two points of error. *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61 (Tex.1983).

We next consider Mrs. Johnson's first cross-point of error in which she contends that the trial court erred in granting Monsanto's motion for judgment n.o.v., and in setting aside the jury's award of punitive damages based on its finding that Monsanto was guilty of gross negligence.

In response to this cross-point, Monsanto contends that in order for it to be found

guilty of gross negligence, the evidence must establish "an entire want of care" on its part and that because there was evidence that it had exercised "some care," the trial court properly entered the judgment n.o.v. in its favor. In support of this contention Monsanto cites *Missouri Pacific Ry. Co. v. Shuford,* 72 Tex. 165, 10 S.W. 408 (1888).

In *Burk Royalty Co. v. Walls,* 616 S.W.2d 911, 917 (Tex.1981), the Texas Supreme Court endorsed the *Shuford* definition as the accepted formulation of gross negligence:

> Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

■ However, the Supreme Court, in *Burk Royalty,* expressly disapproved the use of the "some care" test in deciding legal sufficiency points of error. *Id.* at 922. Thus, in the case at bar, if there is any evidence in the record to support the jury's award, based upon the "entire want of care" standard, we are required to reinstate the award of punitive damages.

■ It is undisputed that Monsanto was not unfamiliar with the concept of an offset gate. There was evidence that Monsanto had specifically designed the placement of a gate at another of its plants so that direct vehicle access was not possible and approaching vehicles had to move laterally to enter the gate. There was also testimony from which the jury could reasonably have inferred that there had been at least one previous instance where a car had accidentally proceeded straight through the gate in question, and other instances where gates had been run into during off hours. Monsanto argues that such testimony was based on hearsay statements of others, and that there was no evidence showing that its supervisory personnel had knowledge of these "problems." However, we find there was competent evidence, albeit circumstantial in nature, to support a reasonable inference by the jury that Monsanto had actual or constructive notice of the dangers incident to maintaining a pedestrian entrance gate at the end of a public thoroughfare. This evidence, coupled with testimony indicating that Monsanto knew how to correct the dangerous condition and chose not to do so, was sufficient basis for the jury's conclusion that Monsanto was consciously indifferent to the welfare of invitees using the gate to enter its premises. In considering a question of gross negligence, the surrounding facts and circumstances, not just individual elements or facts, are determinative. *McPhearson v. Sullivan,* 463 S.W.2d 174, 176 (Tex.1971); *see also, Hamilton v. Texas Oil & Gas Corp.,* 648 S.W.2d 316 (Tex. App.—El Paso 1982, no writ).

We hold, therefore, that the jury could reasonably have decided that Monsanto was aware of the hazardous condition existing at its entrance gate, knew how it might be corrected by offsetting the gate's location, and consciously decided against taking that corrective action. We sustain Mrs. Johnson's first cross-point of error and order the jury's award of punitive damages reinstated. In this respect, we deny Monsanto's request that we find the amount of the award of punitive damages to be excessive and order the award reinstated in the full amount awarded by the jury. *See Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

■ We next consider Monsanto's sixth point of error in which it contends that the trial court erred in excluding the expert testimony of a Texas City police officer who had investigated the accident.

The investigating officer was permitted to testify that he had been at the scene of the accident and had spoken to numerous witnesses, including the driver of the car. He had also taken measurements and had examined the car. He was then asked for his opinion as to the cause of the accident, but upon Mrs. Johnson's objection, was not permitted to state that opinion. Monsanto

presented the following testimony in its bill of exceptions:

Q. And would you tell us, please, sir, what your impression of the cause of this accident was?

. . . . .

A. Well, all I know is a person was driving on 4th Avenue South and didn't make that turn as he was supposed to make on 6th Street, went through the Monsanto plant at a high rate of speed, as the witness has stated, and hit Mr. Johnson and traveled on and dodged this house that was in front of him and went into a ditch.

Q. And was it in your opinion, sir, that the cause of this accident was that the driver of the vehicle in question had had a seizure or blackout?

A. No sir,—can you ask me that again, sir?

Q. Let me try it one more time. Did it become your opinion, sir, that the cause of this accident was the fact that the driver of the vehicle had a seizure or blackout?

A. Yes, sir.

The officer's opinion as to the cause of the accident was not based solely on his direct observations of the event, but also upon his interviews of witnesses after the fact. His opinion that the accident was caused by the driver's "seizure or a blackout" did not involve any specialized medical or accident reconstruction expertise, but rather was based on the officer's interview of witnesses at the scene of the accident. Thus, there was no showing that the officer was specially qualified to express his opinion because of any scientific, technical, or other specialized knowledge that is not generally possessed by a layman. The jury had the direct testimony of the witnesses to the accident and it was in as good a position as the officer to form an opinion as to the cause of the occurrence. The trial court did not err in excluding the police officer's opinion on causation. *See Estate of Brown v. Masco Corp.*, 576 S.W.2d 105

(Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.).

We move next to a consideration of the contentions advanced by the respective parties on the damage issues.

The jury found that the following amounts would fairly and reasonably compensate Mrs. Johnson for the death of her husband:

| | | |
|---|---|---|
| Issue 3(a): | Pecuniary Loss | $210,000 |
| Issue 3(b): | Loss of Consortium | $500,000 |
| Issue 4: | Medical and Hospital | $ 464 |
| Issue 5: | Funeral and Burial | $ 2,444 |

■ In its third and fourth points of error, Monsanto challenges the sufficiency of the evidence to support the jury's award for pecuniary loss and for loss of consortium. In its fifth point, it asserts that such awards were excessive and that this court should order additional remittitur.

Mrs. Johnson refutes these contentions, and in her third cross-point she asserts that the trial court erred in ordering a remittitur of the medical and funeral expenses.

Mr. Johnson was 63 years old at the time of his death in 1979. He was in good health and had no difficulty getting work as an insulator. The year prior to his death he had earned almost $27,000. He also used his handyman skills to benefit his wife.

Monsanto argues that an award of $144,000 would have been more than adequate to compensate Mrs. Johnson for the "care, maintenance, support, services, advise, counsel, and reasonable contributions of pecuniary value" of her husband had he lived. This is based upon an annual salary projection of $18,610 for fifteen years, and does not include compensation for Mr. Johnson's other contributions to the household.

We find the evidence to be sufficient to support the jury's finding that Mr. Johnson's death resulted in pecuniary loss to Mrs. Johnson. We also find that the evidence was sufficient to support the jury's award for loss of consortium. We there-

fore overrule Monsanto's third and fourth points of error.

■■■■ We also overrule Monsanto's fifth point of error in which it contends that the jury's awards for pecuniary loss and loss of consortium were excessive. The actual amount of Mrs. Johnson's pecuniary loss was necessarily dependent upon future conditions and events, and was also subject to whatever amount the jury might attribute to the decedent's non-salaried contributions to Mrs. Johnson's support and welfare. Monsanto argues that the award of $500,000 for loss of consortium was excessive because of Mr. Johnson's advanced age, but that was only one factor to be considered by the jury. Mr. and Mrs. Johnson had been married companions for 40 years, and Mrs. Johnson's testimony was ample basis for the jury to measure the loss of her husband's affection, comfort, solace, companionship, society, assistance, and sexual relations during future years.

The amount of the jury's award for pecuniary loss and loss of consortium does not suggest that the jury was influenced by passion, bias or other improper motive, and there is nothing in the record which indicates that the jury made other than a conscientious effort to decide upon a fair amount of compensation for Mrs. Johnson's loss.

In Mrs. Johnson's third cross-point of error, she contends that the trial court erred in requiring a remittitur of the medical and funeral expenses found by the jury. Responding to this cross-point, Monsanto contends that the remittitur was proper because Mrs. Johnson failed to offer any evidence showing that the expenses were reasonable and necessary.

Mrs. Johnson contends that because Monsanto did not challenge the reasonableness or necessity of the expenses at trial, when the evidence of such expenses was admitted, those matters must be deemed established.

■■■ We do not agree with Mrs. Johnson's contention. It is generally the plaintiff's burden to offer specific evidence of the reasonableness and necessity of expenses, in addition to proof of the actual amount expended. Although medical expense statements can be offered and admitted as evidence of actual expenses, such statements do not, in themselves, constitute evidence of the reasonableness or necessity of the expense.

> In some jurisdictions proof of the expenses incurred or paid for the treatment of personal injuries is regarded as presumptive evidence of the reasonable value of the services, provided the unreasonableness of the charges does not appear from other evidence. This rule has never been followed in Texas, and it is now well settled that proof of the amounts charged or paid does not raise an issue of reasonableness, and recovery of such expenses will be denied in the absence of evidence showing that the charges are reasonable.

*Dallas Ry. & Terminal Co. v. Gossett*, 156 Tex. 252, 259, 294 S.W.2d 377, 382–83 (1956).

■■ In the instant case, Mrs. Johnson offered invoices showing the medical and funeral expenses incurred, but did not offer any evidence showing that all such expenses were reasonable and necessary. Thus, the trial court properly determined that there was no evidence to support the jury's award for these expenses. We overrule Mrs. Johnson's third cross-point of error.

We finally reach Mrs. Johnson's second crossp-point of error in which she contends that she is entitled to prejudgment interest on all damages from the date of Mr. Johnson's death. Mrs. Johnson contends that she is entitled to recover prejudgment interest under the rationale of *Sanchez v. Matthews*, 636 S.W.2d 455 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.), wherein the court stated the rule as follows:

> Prejudgment interest may be recovered when damages are established at a definite time and the amount of damages is definitely determinable. If the damages

are ascertainable by known standards of value and accepted rules of evidence, prejudgment interest is allowable.

636 S.W.2d 455, 460–61.

The rationale of allowing prejudgment interest is to provide a measure of compensation for a defendant's wrongful or unauthorized detention of that which is owed to the plaintiff. *See Phillips Petroleum Co. v. Stahl Petroleum Co.,* 569 S.W.2d 480 (Tex.1978). If there is a bona fide dispute as to the amount owing by the defendant to the plaintiff, so that the amount of damages cannot be determined until the time of final judgment, the courts generally have refused to allow prejudgment interest. *See Pickens v. Alsup,* 568 S.W.2d 742 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.).

The landmark case regarding the allowance of prejudgment interest is *Watkins v. Junker,* 90 Tex. 584, 40 S.W. 11 (1897). In that case, the Supreme Court stated that prejudgment interest should not be allowed when "the jury is allowed a latitude in determining the amount of recovery which renders it too uncertain to be the basis for the allowance of interest." Mrs. Johnson seeks to distinguish *Watkins* from the facts of the instant case, arguing that here the full amount of her damages could be fairly ascertained at the date of Mr. Johnson's death, so that from that date, there was no latitude as to the amount of the damage awarded.

We are of the opinion that in the absence of some statutory authority, the allowance of prejudgment interest is not authorized in this type of case. *Watkins v. Junker, supra.* We accordingly overrule Mrs. Johnson's second cross-point of error.

We modify the trial court's judgment so as to award the additional amount of $250,-000 to Mrs. Johnson based upon the jury's findings of punitive damages, and in all other respects we affirm the judgment of the trial court.